FILED

Oct 20  3 44 PM '03

UNITED STATES DISTRICT COURT DISTRICT COURT
NEW HAVEN, CONN.

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE HEPBURN | : | |
| | : | |
| VS. | : | NO. 3:02CV1252 (MRK) |
| | : | |
| CITY OF TORRINGTON, | : | |
| MARQUAM JOHNSON, | : | |
| BOARD OF PUBLIC SAFETY OF THE | : | |
| CITY OF TORRINGTON, | : | |
| MARY JANE GRYNIUK and | : | OCTOBER 19, 2003 |
| THOMAS GRITT | : | |

## PLAINTIFF'S EVIDENCE IN OPPOSITION TO BOTH
## MOTIONS FOR SUMMARY JUDGMENT

In opposition to the two motions, collectively on behalf of all defendants, for

summary judgment which now are before the court, the plaintiff submits herewith (A) the

affidavit of Gail Coleman Carpenter; and (B) the affidavit of Timothy Schapp.

THE PLAINTIFF

BY _____

JOHN R. WILLIAMS (ct00215)
51 Elm Street, Suite 409
New Haven, CT 06510
(203)562-9931
Fax: (203) 776-9494
E-Mail: jrw@johnrwilliams.com
His Attorney

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GAYLE CARPENTER | : | CIVIL ACTION NUMBER |
| | : | |
| v. | : | 3:00 CV 02296 (SRU) |
| | : | |
| CITY OF TORRINGTON, MARQUAM | : | |
| JOHNSON, THE BOARD OF PUBLIC | : | |
| SAFETY OF THE CITY OF | : | |
| TORRINGTON, MARY JANE GRYNIUK | : | |
| and THOMAS GRITT | : | MARCH 11, 2002 |

**PLAINTIFF'S RESPONSES TO DEFENDANTS FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Pursuant to Fed.R.Civ.P. 33 and 34, defendant, MARQUAM JOHNSON, hereby request that the plaintiff , GAYLE CARPENTER, answer under oath the following interrogatories within thirty (30) days of the time service is made upon its attorney of record and to file amended answers to the date of trial as supplemental or additional information is discovered.

**INTERROGATORIES**

1.    State your names, residence address, business address, date and place of birth, Social Security Number, and driver's license number.

**RESPONSE:**

**Gayle Carpenter;
267 Oakbrook Lane, Torrington, CT 06790;
City of Torrington, Fire Department, 111 Water Street, Torrington, CT 06790;
06/22/50, Charlotte Hungerford Hospital, Torrington, CT 06790;
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;
CT182117210.**

2.    State the name, address, and years of attendance and graduation for each school you have attended, starting with high school and including college, junior college, technical school, or any other place of continuing education.

**RESPONSE:**

**Graduated Torrington High School, 1968;**
**Continuing Education: MacAcademy, class and certificate, do not recall the date.**

3.      Have you ever been or are you currently the subject of or the defendant in any prosecution, administrative action or lawsuit, either civil or criminal? If so, please set forth: (a) the nature, substance, and description of each such complaint, disciplinary action, or lawsuit; and (b) the name and address of each complainant/plaintiff.

**RESPONSE:**

**No, am not a defendant in any case either criminal or civil.**

4.      Please list and identify each injury you claim to have sustained as a result of the incidents alleged in the Complaint.

**RESPONSE:**

**Unbearable stress, anxiety, depression, and humiliation which created physical problems and mental anguish.**

5.      When, where, and from whom did you first receive treatment for said injuries?

**RESPONSE:**

**John A. Magaldi, M.D.**
**538 Litchfield Street, Suite 101**
**Torrington, CT 06790**
**December 3, 1999;**

**Daniel R. Romanos, M.D.**
**One Torrington Office Plaza, Suite 301**
**Torrington, CT 06790**
**December 16, 1999**

**Richard Childs, M.D.**
**Litchfield Acute Care Services**
**Charlotte Hungerford Hospital Emergency Room**

540 Litchfield Street
Torrington, CT 06790
December 12, 1999

James E. Downs, D.C.
168 South Main Street
Torrington, CT 06790

Diane M. Bray, MS, APRN, CS
Route 4
Torrington, CT 06790

6.    State the names and addresses of each physician, therapist, psychologist, psychiatrist, or other source of treatment for the conditions or injuries you sustained as a result of the incident alleged in your Complaint.

**RESPONSE:**

John A. Magaldi, M.D.
538 Litchfield Street, Suite 101
Torrington, CT 06790

Daniel R. Romanos, M.D.
One Torrington Office Plaza, Suite 301
Torrington, CT 06790

Richard Childs, M.D.
Litchfield Acute Care Services
Charlotte Hungerford Hospital Emergency Room
540 Litchfield Street
Torrington, CT 06790

James E. Downs, D.C.
168 South Main Street
Torrington, CT 06790

Diane M. Bray, MS, APRN, CS
Route 4
Torrington, CT 06790

7.    When and from whom did you last receive any medical attention for injuries alleged to have been sustained as a result of the incidents alleged in your Complaint?

**RESPONSE:**

**My treatment is ongoing.**

8.    On what date were you fully recovered from the injuries or conditions alleged in your Complaint?

**RESPONSE:**

**I am not recovered, my injuries and conditions are ongoing.**

9.    If you claim you are not fully recovered, state precisely from what injuries or conditions you are presently suffering.

**RESPONSE:**

**Extreme stress, anxiety, depression and mental anguish and related physical problems.**

10.    Are you presently under the care of any doctor or other health care provider for the treatment of injuries alleged to have been sustained as a result of the incident alleged in your Complaint?

**RESPONSE:**

**Yes.**

11.    If the answer to Interrogatory No.10 is in the affirmative, please state the name and address of each physician or other health care provider who is currently treating you.

**RESPONSE:**

**James E. Downs, M.D.**
**168 South Main Street**
**Torrington, CT 06790;**

John A. Magalia, M.D.
538 Litchfield Street, Suite 101
Torrington, CT 06790;

Diane M. Bray, M.S., A.P.R.N., C.S.
Route 4
Torrington, CT 06790.


     12.    Do you claim any present and/or permanent disability resulting from injuries or conditions allegedly sustained as a result of the incident alleged in your Complaint?

**RESPONSE:**

**Yes, including more severe pain from fibromyalgia.**


     13.    If so, please state the nature of the disability claimed.

**RESPONSE:**

**Extreme stress and anxiety, emotional and mental distress and pain, and pain associated with fibromyalgia.**

     14.    If the answer to the previous interrogatory is in the affirmative, please answer the following: (a) list the parts of your body which are disabled; (b) list the motions, activities, or use of your body which you have lost or which you are unable to perform; (c) state the percentage of loss of use claimed as to each part of your body; and (d) state the name and address of the person who made the prognosis for permanent disability and the percentage of loss of use.

**RESPONSE:**

**The injuries and disabilities I continue to suffer are not limited to body parts.**
**I have not received a prognosis for permanent disability nor a permanency rating.**

     15.    Have you made any statements to any person regarding any of the events or happenings alleged in your Complaint?

**RESPONSE:**

Yes.

16.    Do you have any photographs, motion pictures, or videos depicting any condition, injury or incident as alleged in the Complaint, including but not limited to electronic recordings of sounds or pictures?

**RESPONSE:**

Yes.

17.    State the factual basis for your contention that the defendants acted jointly and in concert with each other as alleged in paragraph 12 of the Complaint.

**RESPONSE:**

**After incidents were reported to Deputy Chief Schapp, he reported them to Mayor Mary Jane Gryniuk. The Mayor took no immediate steps to resolve the information brought to her. It caused great anxiety to me. I felt worthless because I had to report to work and face each day alone. After the submission of my letter, Johnson was suspended with pay. Johnson has taken sexual harassment classes, yet that was not taken into consideration. Instead he was ordered to take another sexual harassment course and given time off (suspension) with pay. Minutes of October 18, 1999 indicate that Mayor Gryniuk, Thomas Gritt, and other members of the City Council looked out for Johnson's well being and I was given no consideration. Personnel Director Thomas Gritt pointed out that wage increases had not been tied to merit nor to performance, and it sounded like they (City Council) were talking about a "performance" issue. (see minutes dated 10/18/99 #3230) I was, at that time, employed by the City of Torrington for approximately twenty-eight years, had a totally "clean" record. I was very concerned about my well-being at the Fire Department but no one seemed to care.**

18.    State the factual basis for your contention that the plaintiff has been subjected to an extraordinary hostile work environment, rife with overwhelming sexual harassment for an extended period of time as alleged in paragraph 14 of the Complaint.

**RESPONSE:**

**1.    On 3/31/99 at approx. 12:00 p.m. I was having a conversation with Deputy Chief Schapp.Chief as I was leaving for lunch. I was telling**

the Deputy Chief that my allergies were bad and I had to take steroids. Chief Johnson came out of his office and said "Won't it give you larger breasts? I did not believe it to be funny in any way, shape, or form. I was humiliated, embarrassed and upset. I remember speaking to my friend Enid Silva about the incident on my lunch break. I also remember crying that day. I told Chief Johnson that it was unacceptable to speak to me in such a manner and that as Chief of the Dept. he should lead by example.

2.  In April 1999 while looking at some paperwork Chief Johnson said "can' t you finger it out ?"

3.  Chief Johnson referred to me as "Babe" on numerous occasions. He (Chief Johnson) spoke to the Former Fire Marshal regarding the term "babe" because I told Chief Johnson that I did not like being referred to as "babe. " After Chief Johnson spoke to the former Fire Marshal Chief Johnson was now referring to me as "babe. " He thought it was funny, I did not.

4.  Chief Johnson said "if you  weren't my secretary I'd kiss you"

5.  Chief Johnson made a remark about my lipstick

6.  Chief Johnson always referred to "whacking pee-pees" with regard to disciplining the fire fighters. It was humiliating

7.  On or about November 3, 1998 I was struck in buttocks with photograph album. I was extremely upset. I spoke to D/Chief Schapp about the incident. D/Chief Schapp told me when he spoke to Mayor Gryniuk about the "yardstick incident" nothing came of it. He doubted that speaking to Mayor Gryniuk would help me this time. I was extremely uncomfortable and tried to keep more of a distance between Chief Johnson and myself. I felt devastated because no one would intercede. I also told Training Officer Hepburn about Johnson's actions.

8.  On or 9/13/99, "BITCH" was written on chalkboard It caused me extreme stress and humiliation when I saw the writing. (See Memo from Training Officer and Chief Johnson's workout schedule attached.) T/O Hepburn told be that Johnson's response was "why did you just erase it?

9.    On or about 9/14/99 "BITCH = FEMALE DOG" was on chalkboard in the Workout Room.

10.    Upon informing Chief Johnson of my medical appointment he responded "is it terminal ?" I was going to my gynecologist for my annual checkup. My mother (she was my best friend) died after a painful bout with breast cancer. I am always extremely nervous when I go each year. I was concerned enough without hearing such a remark from Chief Johnson.

11.    Chief Johnson was allowed to enter the Fire Department Building during his suspension a number of times. This caused me a great deal of stress and concern. Unfortunately, no one else cared.

12.    Chief Johnson would continue to tell me that the Fire Department is "a man's world".

13.    Open arguments between Johnson and other fire personnel. There was a great deal of tension between Chief Johnson and Dep. Chief Schapp throughout this time.

14.    Johnson changed my job title from Senior Secretary to "Clerk" in 1999 Municipal Telephone Directory that is updated each year by the Mayor's Office.

15.    Offensive language of a sexual nature written in the mezzanine area. It is still there.

16.    Chief Johnson told me that when nobody else is around I could call him Mark-I never did.

17.    Chief Johnson asked me if I was having a "hot flash"; embarrassing enough without him asking me.

18.    Chief Johnson struck me on the buttocks while I was faxing a letter in dispatching.

19.    It is denied that Chief Johnson's stated "it's a man's world" to me was because we were speaking in reference to pay. Chief Johnson stated "it's a man's world" because we were discussing my need for

more memory or a new hard drive because I was getting error messages on my computer. Chief Johnson went on to say that I was demanding and told me that first and foremost were the needs of the fire fighters. I, in turn said "I guess what you are saying is that this is a man's world." Chief Johnson responded "yes it is." It was.

19.    State the factual basis for your contention that the plaintiff has been subjected to harassment, unwanted touching of a sexual nature, commentary of a sexual nature directed at he, and the utter frustration and helplessness of predatory and unresponsive supervisors as alleged in paragraph 14 of the Complaint.

RESPONSE:

Chief Johnson told me during a conversation that he carries grudges. I became extremely upset. I cried that day because I didn't know what to say or do, after all, I reported to him on a daily basis.  The next day I received a note (see attached) and Chief Johnson was apologizing to me

All of the above caused much stress humiliation and embarrassment. I was extremely concerned not only for my well-being but my position in the Department.

I had told Chief Johnson on numerous occasions that I did not want him speaking to me in this manner stated, nor did I want him to touch me. He just did not seem to understand. Mayor Gryniuk and Personnel Director Thomas Gritt did not take Chief Johnson's actions as seriously as they should have taken them. Chief Johnson was given a 3 day suspension with pay. What lesson was he taught here? I felt like they just didn't care about what was happening in the Fire Department. I did go to the Personnel Office, and Mr. Gritt, Attorney Victor Muschell did question me and take a statement, but it should have been the Mayor and Board of Safety members that spoke to me because according to the job description the Chief reports to them not to T. Gritt or V. Muschell. I felt that there was no true concern for my well-being. When Chief Johnson said and did these things to me he would always have a "reason " behind why it was said or done.  My friend, Enid Silva had to leave her job one day because of my being so upset. There was no one upstairs in the offices at the time.  I was having difficulty crying and being extremely stressed. When Enid called Personnel Director Tom Gritt, he offered no assistance. Please see her testimony in the Police report. Mayor Gryniuk made a statement in the Newspaper regarding Chief Johnson's actions and was quoted as saying "what does that have to do with his being a

good Administrator" (see Litchfield County Times.) I believe it had everything to do with it. Chief Johnson ruined my work life and drastically affected my home life. My husband is very concerned because I am always upset. I am blessed with a truly good husband. I feel like I am a changed person because I've lost my self-respect and feel so insignificant.

20.    State the factual basis for your contention that on two prior occasions in 1998, the defendant Johnson had struck the plaintiff on her buttocks with a ruler as alleged in paragraph 16 of the Complaint.

**RESPONSE:**

In 1998 I was struck by Chief Johnson with yardstick down in the dispatching office while I was trying to send a fax. He walked into dispatching, walked around the area where the 2 beds for the officers are, walked up behind me then struck me in the buttocks with a yardstick. I did say to Chief Johnson "that's sexual harassment." Dispatcher Wayne Yurgalevicz was present, however he had his back turned (attending to incoming calls) . It was embarrassing and humiliating to discuss I, but I had to tell D/Chief Schapp.

21.    State the factual basis for your contention that on or about November 3, 1998, the defendant Johnson stuck the plaintiff on the buttocks with a large photograph album as alleged in paragraph 17 of the Complaint.

**RESPONSE:**

On or about November 3, 1998, the Chief called my office and asked me to bring the photo album to his office. The photo album was the one that had approx. 4 X 6 photos of the Department. I was concerned how to do this, since I was using crutches because of a sprained ankle. I did not want the defendant to come down to my office, so I dropped the album, and pushed it along with one of my crutches to his office. He picked up the photo album and hit me in the buttocks with it. I was so upset, I could not speak. I went back to my office and cried. I reported this incident to D/C Schapp.

22.    State the factual basis for your contention that during the month of April 1999, the defendant stated to the plaintiff, "Can't you finger it out" as alleged in paragraph 18 of the Complaint.

**RESPONSE:**

**I was looking at a chart that I created and Chief Johnson came out of his office to copy a document. His reply was "Can't you finger it out?" I remember from back in my school days that it was not appropriate. I became very upset, embarrassed and humiliated. I reported this incident to D/Chief Schapp.**

     23.     State the factual basis for your contention that on numerous occasions the defendant Johnson spoke to the plaintiff about punishing male employees of the Torrington Fire Department by "whacking their pee-pees" as alleged in paragraph 19 of the Complaint.

**RESPONSE:**

**Chief Johnson would walk out of his office on many occasions stating that he would be "whacking their pee-pees" when referring to punishments the fire fighters would be given. Chief Johnson said this often, causing me humiliation and embarrassment.**

     24.     State the factual basis for your contention that on numerous occasions the defendant Johnson remarked upon the plaintiff's lipstick as alleged in paragraph 20 of the Complaint.

**RESPONSE:**

**While speaking to Chief Johnson he would say "I like your lipstick." It made me feel self-conscious and embarrassed.**

     25.     State the factual basis for your contention that on two occasions, the defendant Johnson stated to the plaintiff that he would kiss her if she were not his secretary as alleged in paragraph 21 of the Complaint.

**RESPONSE:**

**On two occasions, after Chief Johnson would look at the my work or project that I completed for him he would say "If you weren't my secretary I would kiss you".**

     26.     State the factual basis for your contention that on repeated occasions the plaintiff has complained of the hostile work environment and the actions of the defendant Johnson to the defendants as alleged in paragraph 25 of the Complaint.

RESPONSE:

I complained on numerous occasions to Deputy Chief Schapp. I was constantly upset and very nervous, and he knew this. Unfortunately, when he spoke to Mayor Gryniuk at City Hall about my complaints, everything fell on deaf ears.

27.    State the factual basis for your contention that the defendants took no action to protect the plaintiff from further harassment as alleged in paragraph 29 of the Complaint.

RESPONSE:

Ultimately, D/Chief Schapp was suspended. I felt extremely upset because I could not tell Chief Johnson because he would apologize and then do it again. The next person in charge was Deputy Chief Schapp. I saw what happened to him and became very concerned for my position. It made me feel like the city would "kill the messenger," and that I had nowhere to go. I felt that if Mayor Gryniuk did not respond to what D/Chief Schapp told her, what could I do? I was scared. Deputy Chief Schapp also said he spoke to Board of Safety Commissioners Telman and Potter before I wrote my memo to Mayor Gryniuk, T. Gritt, and Board of Safety Members. I did not receive any inquiry from Commissioners Telman and Potter.

28.    State the factual basis for your contention that the defendants retaliated against the plaintiff as alleged in paragraph 30 of the Complaint.

RESPONSE:

Chief Johnson was allowed to enter the building while on suspension. I was told by Fire Marshal Tharau that Chief Johnson was downstairs and he (Tharau) would talk to him. Considering how upset I was with Chief Johnson being allowed in the building, I wrote (2) Memos to Acting Chief Field regarding Johnson coming into the building. He stated that he had no control on keeping him (Johnson) out of the building. Yet, there is a clause for suspension stating that the employee shall not enter the Fire Dept. Building while under suspension. After Johnson returned he did not speak to me if he could help it. I was not contacted by Mr. Gritt to see if I was doing O.K. There was extreme tension. I still felt very concerned about my well-being. Again I had to deal with the lack of communication myself. Chief Johnson continued to speak about "wacking pee pees in his office. My office was down the hall, but I had to go up to the part-time secretary's office throughout the workday, which is adjacent to Chief Johnson's

office. Johnson left his door open.

29.    State the factual basis for your contention that the defendant Johnson was permitted to return to the Torrington Fire Department where he caused the plaintiff further fear for her physical safety and emotional well being as alleged in paragraph 34 of the Complaint.

## RESPONSE:

Chief Johnson was allowed to enter the Fire Department while under suspension with pay. I spoke to Fire Chief Field, also sent memos to him hoping that it would stop. According to the rules when a member of the Fire Department is suspended he is not to enter the Department. There was also "talk" that Chief Johnson went to F/Fighter Riggs's home to apologize to him for his (Johnson's conduct) and when F/F Riggs asked the Chief if he could get him something (meaning a drink) Johnson mentioned a gun. This made me even MORE fearful for my well being. I was EXTREMELY STRESSED during Chief Johnson's suspension.

30.    State the factual basis for your contention that the actions of the defendant City of Torrington constitute a failure to adequately train, supervise, discipline, screen and hire members of the Torrington Fire Department as alleged in paragraph 36 of the Complaint.

## RESPONSE:

Chief Johnson was given a 3-day suspension from Personnel Director T. Gritt with pay for what he had said and done to me. Since Chief Johnson had previously attended and completed Sexual Harassment classes, it is unclear to me why he was given so many chances. F/Marshal Tharau was just recently suspended three days without pay for his remarks to Chief Field. Why was Chief Johnson suspended with pay for what he had said and done to me?

Chief Johnson's Job Description indicates that he, as Chief of the Dept.reports to the Mayor and Board 0f Public Safety. Part of his duties are to administer personnel policies and practices including hiring, termination, assignment performance evaluation, labor relations, etc. Chief Johnson also supervises a Deputy Fire Chief, Training Officer, Fire Marshal, Captains, Lieutenants, Inspectors, paid fire fighters, Voluntary Chiefs and a secretary. It also states "ability to make decisions involving the safety of others and the protection of property. It also states "ability in oral and written communications. ALSO: Ability

to establish and maintain effective working relationships with superiors, subordinates, officers of volunteer fire companies, officials of other agencies and the general public. This is in accordance with Job Description 800, dated 1994. The Deputy Chief of the Department is 2nd in command.

31.    State the factual basis for your contention that the defendants have deprived the plaintiff of her rights under Title VII of the Civil Rights Act of 1964 as alleged in paragraph 40 of the Complaint.

RESPONSE:

Chief Johnson would not have said and committed these acts if I was not a woman. Mayor Gryniuk and Commissioners Telman and Potter did not try to help me knowing what had taken place (D/Chief Schapp told them.) I was extremely upset.

32.    State the factual basis for your contention that the defendants have deprived the plaintiff of her due process rights as alleged in paragraph 40 of the Complaint.

RESPONSE:

Despite the sexual harassment classes that Chief Johnson attended he did not have sexual harassment policies posted. I felt like I was being discriminated against because the actions of Chief Johnson. Johnson also told me he carries grudges. I went to D/Chief Schapp because he was second in command, he told Mayor Gryniuk and Commissioners Potter and Telman. Nothing was done.

33.    State the factual basis for your contention that the defendants have deprived the plaintiff of her rights to equal protection of the laws as alleged in paragraph 40 of the Complaint.

RESPONSE:

After Deputy Chief Schapp told Mayor Gryniuk, and two members of the Board of Safety (Telman & Potter) about my serious issues I was never contacted by any of them. I was given no choice but to send the memo because Mayor Gryniuk, and Commissioners Potter and Telman never tried to contact me, I felt that I had nowhere to turn. When Chief Johnson told me he carries grudges I was extremely concerned that my position in the Fire Department was in jeopardy and so was

**my well being. I had to protect myself because Mayor Gryniuk and Commissioners Telman and Potter chose not to investigate further.**

34.    State the factual basis for your contention that the defendants have deprived the plaintiff of her rights under the First Amendment as alleged in paragraph 40 of the Complaint.

**RESPONSE:**

**I felt I was being punished because I spoke the truth to Deputy Chief Schapp. As stated above (#33.) I did believe that Mayor Gryniuk and Commissioners Telman and Potter sent me their messages by not contacting me after speaking with the Deputy Chief (Schapp.) I also felt like my position as Senior Secretary was in jeopardy. This caused me to have tremendous stress and concern for my well being.**

35.    State the factual basis for your contention that the defendants have deprived the plaintiff of her rights under the Fifth Amendment as alleged in paragraph 40 of the Complaint.

**RESPONSE:**

**I told Chief Johnson "that's sexual harassment" when he struck me with a yardstick in the Dispatch Office (while I was using the fax machine.) Chief Johnson continued to say and do things to me (see #18.) It was his choice to continue doing it. I was the victim not Chief Johnson. Everything seemed to fall on "deaf ears. "**

36.    State the factual basis for your contention that the defendants have deprived the plaintiff of her rights under the Fourteenth Amendment as alleged in paragraph 40 of the Complaint.

**RESPONSE:**

**Mayor Gryniuk and Commissioners Potter and Telman never contacted me after learning from Deputy Chief Schapp what Chief Johnson was doing and saying. I didn't get the chance to tell my side of the story. Chief Johnson was being protected more than I was. Chief Johnson answered to Mayor Gryniuk and Commissioners Telman and Potter.**

37.    State the factual basis for your contention that the defendants have deprived the plaintiff of constitutional protections available to her under the constitution of the State of Connecticut as alleged in paragraph 41.

**RESPONSE:**

**My civil rights were violated. I continued to tell Chief Johnson that I did not like his comments or actions. Mayor Gryniuk, and Board of Safety Commissioners Telman and Potter never contacted me after D/Chief Schapp spoke to them. I felt like I was being discriminated against because I told Deputy Chief Schapp what was happening. I reported to Chief Johnson. This made it extremely difficult for me. It caused me a great deal of stress knowing that I had nowhere to go. I had approx. 27 years working for the City and believed my position was in jeopardy. D/Chief Schapp had his problems after he went to Mayor Gryniuk and Commissioners Telman and Potter.**

**REQUESTS FOR PRODUCTION**

The defendant, MARQUAM JOHNSON, requests that the plaintiff produce for inspection, copying, testing or sampling, as the case may be, the documents or tangible things described hereinafter, pursuant to Rule 34 of the Federal Rules of Civil Procedure. The place of production shall be at the law offices of Howd & Ludorf .

1.    All hospital records relating to treatment received as a result of the alleged incident, and to any injuries, diseases or defects to which reference is made in the answers to the preceding interrogatories, and written authorization to inspect and make copies of said hospital records.

**RESPONSE:**

**Attached.**

2.    All reports of all doctors and all other care providers relating to treatment allegedly received by the plaintiff as a result of the alleged incident, and to the injuries, diseases or defects to which reference is made in the answers to the preceding interrogatories exclusive of any records prepared or maintained by a licensed psychiatrist or psychologist) and written authorization to inspect and make copies of said reports.

**RESPONSE:**

**Attached.**

3.      All reports of all doctors and other mental health care providers relating to treatment allegedly received by the plaintiff as a result of the alleged incident and to the emotional injuries, diseases or defects to which reference is made in the answers to the preceding interrogatories. Please also sign the enclosed mental health authorization appended pursuant to Conn. Gen. Stat. § 52-146c(c), § S2-146d, and § 52-146e.

**RESPONSE:**

**Attached.**

4.      All medical bills that are claimed to have been incurred as a result of this incident.

**RESPONSE:**

**Some attached as provided by physicians; insurance paid for 80% of my treatment.**

5.      All bills for each item of expense that is claimed to have been incurred as a result of this incident and not produced in response to Production Request No.4 above.

**RESPONSE:**

**Not applicable.**

6.      All photographs taken by any person which depict your condition or injuries which were allegedly sustained as a result of the allegations in your Complaint.

**RESPONSE:**

**Photographs of BITCH, BITCH = FEMALE DOG.**

7.      A copy of any non-privileged statement of any party in this lawsuit concerning this action or its subject matter.

**RESPONSE:**

**Attached.**

8.    A copy of any employment/retainer agreement between yourself and the law firm of Williams & Pattis, LLC which governs your legal representation in the present case.

**RESPONSE:**

**Objection, attorney-client privilege.**

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

GAYLE CARPENTER                              :
                                             :
VS.                                          :        No. 3:00CV02296 (SRU)
                                             :
CITY OF TORRINGTON, ET AL.         :

## OATH OF RESPONDENT

I, **GAYLE CARPENTER**, being of sound mind and legal age, and having

been duly sworn, do hereby depose and say that:

The answers to the Interrogatories and the documents provided in response to

the Request for Interrogatories and Production are true, accurate and complete to the

best of my knowledge and belief.


_____
GAYLE CARPENTER

Subscribed and sworn to before me this 18th day of February, 2002.


_____
Notary Public

My Commission Expires June 30, 2004

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE HEPBURN | : | |
| | : | |
| VS. | : | NO. 3:02CV1252 (MRK) |
| | : | |
| CITY OF TORRINGTON, | : | |
| MARQUAM JOHNSON, | : | |
| BOARD OF PUBLIC SAFETY OF THE | : | |
| CITY OF TORRINGTON, | : | |
| MARY JANE GRYNIUK and | : | OCTOBER 20, 2003 |
| THOMAS GRITT | : | |

## AFFIDAVIT OF JOHN R. WILLIAMS

| | | | |
|---|---|---|---|
| STATE OF CONNECTICUT | ) | | |
| | ) | SS: | New Haven |
| COUNTY OF NEW HAVEN | ) | | |

JOHN R. WILLIAMS, having been duly sworn, states:

1. I represent Timothy Schapp, a member of the Torrington Fire Department.

2. Members of my law firm represented Mr. Schapp when he filed his complaint of unlawful employment discrimination with the Connecticut Commission on Human Rights and Opportunities.

3. The document attached hereto is a true, accurate and complete copy of a complaint which Mr. Schapp signed and swore to, and which this office filed on his behalf with the Connecticut Commission on Human Rights and Opportunities.

_____
JOHN R. WILLIAMS

Subscribed and sworn to before me this 20th day of October, 2003.


_____
Notary Public
PATRICIA A. AFFIE
*NOTARY PUBLIC*
**MY COMMISSION EXPIRES JULY 31, 2008**

# STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES
### AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE

DATE: September 13, 1999
CASE NO.:_____

My name is Timothy Schapp and I reside at 42 Dorothy Drive, Torrington, CT 06790.

The respondents are Chief Marquam Johnson, Mayor Mary Jane Gryniuk, Personnel Director Tom Gritt, The Board of Safety of the City of Torrington, Commissioner Kenneth Fuchsman, Commissioner Philip Kozlak, Commissioner James Potter, Commissioner Carolann Kennedy, Commissioner Thomas Telman, Jr., Commissioner Frank J. Rubino and the City of Torrington, whose business address is 140 Main Street, Torrington, CT 06790.

I was
( ) discharged
(x) suspended
( ) placed on probation
( ) earning a different rate of pay
( ) demoted
(x) warned
( ) given poor evaluation
( ) denied a raise
( ) less trained
( ) denied an office
(x) harassed

( ) not hired/not promoted
( ) not rented a dwelling
( ) denied sale of dwelling
( ) aiding and abetting
    ( ) denied union representation
( ) constructively discharged
    (x) retaliated
( ) not hired/reinstated due to a BFOQ
    ( ) terminated due to disability
    ( ) not reinstated due to a disability

on June 28,1999 and believe that my:
( ) race
( ) color
(x) sex
( ) pregnancy
( ) ancestry
( ) age
   DOB:
( ) religion

( ) national origin
( ) marital status
( ) physical disability
( ) mental retardation
( ) religious creed
( ) familial status
( ) sexual orientation

( ) mental disorder
( ) alienage
(x) previously opposed, filed or assisted
( ) learning disability
( ) creed

was in part a factor in this action. I believe that the respondent violated the following Connecticut General Statutes Sections enforced through Section 46a-58(a) and acts listed below:

(x) 46a-58(a)
(x) 46a-60(a)(1)                     (x)Title VII of the Civil Rights Act of 1964,

(x) 46a-60(a)(4)                          as amended by the Civil Rights Act of 1991
( ) 46a-60(a)(3)                          ( )Age Discrimination in Employment Act of
( ) 46a-60(a)(5)                              1967, 29 U.S.C. 621-634
( ) 46a-60(a)(7)( )( )( )( )( )                ( ) Americans With Disabilities
(x) 46a-60(a)(8)( )( )( )( )( )                    Act, 42 U.S.C. Title I
( ) 46a-64( )( )( )                        ( ) Equal Pay Act of 1964
( ) 46a-64c(a)( )( )( )                    ( ) Sec. 504 of Rehabilitation
( ) 46a-64c(a)(4)(A)                           Act of 1973, as amended
( ) 46a-64c( )( )                          ( ) Title VIII of Civil Rights
( ) Sec. 3(1) of PA 91-58                  Act of 1968, as amended by
                                           Fair Housing Amendment Act
                                           of 1988 (U.S.C. 3600-6620)

## THE PARTICULARS OF MY COMPLAINT ARE AS FOLLOWS:

1. At all times relevant to the instant complaint, I was and am the Deputy Chief of the Torrington Fire Department. I have been with the Department nearly fifteen years, and have been the Deputy Chief for over three years.

2. For an extended period of time, I have had to work in a hostile work environment, due primarily to the action of Chief Marquam Johnson.

3. On or about January, 1999, I was called to a meeting with Mayor Gryniuk. At that meeting, I reported to the Mayor the problems that I was experiencing with Chief Johnson. In particular, I reported that the Chief had engaged in inappropriate sexual behavior in the workplace which I found very offensive and disturbing. I informed the Mayor that the Chief's actions were creating an intolerable and threatening work atmosphere.

4. Later that month, I spoke directly with Chief Johnson, and told him of my serious concerns.

5. After speaking with Chief Johnson, I also spoke with Board of Safety Commissioners Telman and Potter, expressing my concerns about the Chief's behavior to them.

6. On January 28, 1999, I circulated a memorandum to all Captains of the Torrington Fire Department, banning any circulation of pornography among department personnel or its visitors. My memo included, but was not limited to magazines, books, videos, and the Internet. I requested that the Captains have all members of their shifts sign the memo, and that the memo be returned to me.

7. On March 31, 1999 was speaking to Gayle Carpenter, Senior Secretary. In response to Ms. Carpenter's telling me that she was taking steroids for her allergies,

Chief Johnson replied to Ms. Carpenter, "Won't it give you larger breasts?" I was deeply embarrassed and humiliated by the Chief's sexual remark.

8. This type of permissive and inappropriately sexual environment has existed in our workplace for some time. Approximately one year prior to the Chief's comments to Ms. Carpenter, a training video was replaced with an X-rated video tape in the video recorder normally used by us to view training videos. The training officer in our department unknowingly played the tape before an entire training class he was instructing.

9. On May 10, 1999, I once again met with Chief Johnson to express my concerns. The Chief once again denied that anything was wrong with his behavior or the way in which he supervised the personnel in our department.

10. In addition to the incidents above, Chief Johnson has on numerous occasions behaved in an inappropriate sexual manner. For example, Chief Johnson has repeatedly fondled the buttocks of Ms. Gayle Carpenter. On another occasion, Chief Johnson grabbed an employee by the testicles. On another occasion, Chief Johnson has been in his office attired only in gym shorts.

11. On May 26, 1999 I forwarded to Personnel Director Tom Gritt a copy of the January 28, 1999 memorandum, banning any circulation of pornography among Torrington Fire Department personnel or its visitors.

12. On May 27, 1999, Larry Hepburn and Michael Zavatky gave statements about the sexual harassment of Chief Johnson.

13. During the week of May 28, 1999, I received numerous further complaints of inappropriate and threatening sexual conduct related to the actions of Chief Johnson. These complaints only heighten the discomfort I was feeling about my working environment. I received the following complaints:
    Private Michael Solani reported to me that Chief Johnson pulled down his sweatpants in front of Mike's two young sons on an occasion when Mr. Solani brought his sons into Headquarters for a visit. Mr. Solani expressed his disapproval of that incident to the Chief.
    Mary Robinson reported to me that the Chief has undressed in his office on more than one occasion, each time without closing the door.
    Lieutenant Charles Warner reported to me that he was working as the dispatcher one evening, in the presence of Chief Johnson and several Volunteer Fire Chiefs. On that evening, Lt. Warner made an error in dispatching a vehicle, and Chief Johnson instructed him to "pull out his pee pee so that he [Chief Johnson] could whack it."

14. On June 1, 1999, Lieutenant David Starr informed me that after the Memorial

Day Parade when the Color Guard was in formation, Chief Johnson was seen blowing into the ear of Private Mark Garrison.

15. On June 2, 1999, I reported the above incidents to Personnel Director Tom Gritt. I was instructed by Mr. Gritt to keep a written record of the incidents involving Chief Johnson, and to direct the individuals above to him.

16. On June 2, 1999, I again met with Mayor Gryniuk. I expressed my inability to continue working under the hostile, threatening and inappropriately sexual work environment created by the unchecked actions of Chief Johnson.

17. On June 9, 1999, I met with the Board of Safety and Mayor Gryniuk in executive session. I once again informed them of the hostile work environment at the Torrington Fire Department, and specifically the actions of Chief Johnson.

18. On June 14, 1999, I was informed that the Board and the Mayor did not intend to take any steps to prevent further harassment or to address the hostile work environment.

19. That same day, the Chief confronted me, demanding to know "what was the matter with me?" I tried to explain to him that I felt very intimidated and harassed by his inappropriate behavior, but he would not listen to me. His actions only made me more upset, so I attempted to try to retreat to my office. The Chief followed me, and, although I was far too upset to have a conversation with him, he ordered me "as my boss" to continue to be subjected to this hostile and highly upsetting situation.

20. These events were more than I could handle. I began packing up my personal belongings, as I felt that I could no longer work in such a hostile work environment, where my repeated requests for assistance and change were ignored, and I was now being subjected to direct, face to face confrontations with Chief Johnson.

21. At approximately 3:15 that afternoon, I again met with Mayor Gryniuk and Commissioners Telman and Fuchsman. I once again described to her in detail the unbearable situation under which I was forced to work, going over each incident of harassment and inappropriate sexual behavior of Chief Johnson. Mayor Gryniuk claimed that she would be referring me to Personnel Director Tom Gritt to address any and all of the harassment and inappropriate sexual behavior issues.

22. On June 17, 1999, I met with Tom Gritt. I went to this meeting believing that at long last we would be addressing the hostile workplace issues I had been bringing to the Mayor's, The Chief's and the Safety Board's attention for some time. I had been told by Mayor Gryniuk that this was the purpose of this meeting.

23. Instead of addressing these issues, Personnel Director Gritt began a disciplinary hearing against me, and started questioning me.

24. On June 22, 1999, again believing that I would be heard and that action would be taken to correct the hostile and inappropriately sexual work environment created by Chief Johnson, I was summoned by Personnel Director Gritt.

25. At that meeting, I was informed that I was being disciplined. I received a one week suspension and a final written warning threatening me with termination. I had never before received any written warning whatsoever from the Department.

26. I was harshly and unfairly disciplined merely because I repeatedly spoke out about that actions of the Chief, reported those actions and my feelings of intimidation at the workplace, and because of my request that these problems be addressed.

27. I expressed my shock at being disciplined for requesting that the hostile work environment be changed, and requested a joint meeting of the City Council and the Board of Safety to hear the particulars of the harassment I was suffering at the workplace. Personnel Director Gritt informed me that if I requested that meeting, he would accused me of "recruiting" people to testify about their incidents with Chief Johnson.

28. On June 23, 1999 I received a letter of suspension and final warning. Rather than coming from the Mayor or the Board of Public Safety as the Charter of the City of Torrington states, the punishment letter came from Chief Johnson. No provision of the Charter permits this, and it can only be construed as a personal attack upon me for complaining about the actions of the Chief and the hostile workplace he created.

29. As recently as August 5, 1999, Chief Johnson has continued his sexually inappropriate and harassing behavior. I still feel threatened and intimidated in my workplace, but I am now afraid to speak out and complain, as I was punished for doing so in the past.

**CHARGE OF DISCRIMINATION**                    ( ) FEPA

                                                                              (x) EEOC

-----------------------------------------------------------------Connecticut Commission on Human

Rights & Opportunities and EEOC

-----------------------------------------------------------

NAME
Mr. Timothy Schapp                    HOME TELEPHONE NO.
                                      (860) 482-9060

-----------------------------------------------------------

STREET ADDRESS      CITY, STATE & ZIP CODE        COUNTY
42 Dorothy Drive        Torrington, CT  06790        Litchfield

-----------------------------------------------------------

NAME OF EMPLOYER WHO DISCRIMINATED AGAINST ME:
  Chief Marquam Johnson, Mayor Mary Jane Gryniuk, Personnel Director Tom Gritt,
The Board of Safety of the City of Torrington, Commissioner Kenneth Fuchsman,
Commissioner Philip Kozlak, Commissioner James Potter, Commissioner Carolann
Kennedy, Commissioner Thomas Telman, Jr., Commissioner Frank J. Rubino and the
City of Torrington.

-----------------------------------------------------------

NAME                    NO. OF EMPLOYEES              TELEPHONE NO.
See above.              Ca. 60 (Fire Department)      (860) 489-2228
                        Ca. 300 (City of Torrington)

-----------------------------------------------------------

STREET ADDRESS                  CITY, STATE AND ZIP CODE
140 Main Street                     Torrington, CT 06790

-----------------------------------------------------------

BECAUSE OF DISCRIMINATION BASED ON        DATE MOST RECENT OR
( ) RACE          ( ) COLOR        (x) SEX    CONTINUOUS DISCRIM-
( ) RELIGION      ( ) NATIONAL ORIGIN         INATION TOOK PLACE
( ) AGE           (x) RETALIATION    (x) OTHER    See above.

-----------------------------------------------------------

THE PARTICULARS ARE

    The particulars of this charge of discrimination are set forth in my
    complaint attached which I filed with the Connecticut Commission on
    Human Rights and Opportunities on September 13,1999, which is
    attached hereto and incorporated herein as fully set forth herein.


I also want this charge filed
   with the EEOC.

                              -------------------------------------------

I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

-------------------------------------------

I declare under penalty of perjury that the foregoing is true and correct.

-------------------------------------------

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS 13th DAY OF SEPTEMBER, 1999.

--------------------------------------------------------------(x)

NOTARY