FILED

Oct 20  3 44 PM '03

UNITED STATES DISTRICT COURT
DISTRICT COURT
NEW HAVEN, CONN.

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE HEPBURN | : | |
| VS. | : | NO. 3:02CV1252 (MRK) |
| CITY OF TORRINGTON, MARQUAM JOHNSON, BOARD OF PUBLIC SAFETY OF THE CITY OF TORRINGTON, MARY JANE GRYNIUK and THOMAS GRITT | : : : : : : | OCTOBER 19, 2003 |

## PLAINTIFF'S BRIEF IN OPPOSITION TO BOTH MOTIONS FOR SUMMARY JUDGMENT

This is an action pursuant to Title VII and the Connecticut Fair Employment Opportunities Act, 42 U.S.C. § 1983 for federal constitutional violations, and Connecticut common law for the intentional or reckless infliction of emotional distress. The plaintiff, a high-ranking officer in the Torrington Fire Department, alleges that the defendants for a long time inflicted, tolerated and encouraged an intolerable sexually hostile work environment in the department. All defendants have moved for summary judgment on a variety of grounds, which will be addressed hereinafter.

The plaintiff has submitted two Local Rule 56(a)2 Statements of Material Fact and the affidavits of two other department employees: Gail Carpenter, the secretary to the Fire Chief, and Timothy Schapp, the Deputy Fire Chief. In addition to the plaintiff's own deposition testimony, these materials document an astonishing working

environment for a public agency, in which men and women alike were likely to be groped or humiliated at any moment and those who complained were punished for doing so. While the plaintiff himself was never so assaulted, he was forced to endure working in such an environment for years.

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160

(1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

**A. CLAIMS AGAINST INDIVIDUAL DEFENDANTS UNDER TITLE VII AND CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT**

The plaintiff agrees that his claims pursuant to Title VII and the Connecticut Fair Employment Practices Act are cognizable only against the employer and not against supervisors in their individual capacities.

**B. WHETHER THE BOARD OF PUBLIC SAFETY IS A LEGAL ENTITY**

The defendants, and most importantly the defendant City of Torrington, argues that the Board of Public Safety is a mere agency of the City and not a separate entity. The plaintiff will take the defendant at its word. As such, claims against the Board of Public Safety, like the claims against individual defendants "in their official capacities" are to be construed as complaints against the City itself. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989); Kentucky v. Graham, 473 U.S. 159 (1985); Penhurst State School and Hospital v. Halderman, 465 U.S. 89, 101 (1984); Laxey v. Louisiana Board of Trustees, 22 F.3d 621 (5th Cir. 1994); Murphy v. State of Arkansas, 127 F.3d 750 (8th Cir. 1997); Eaglesmith v. Ward, 73 F.3d 857 (9th Cir. 1996); Marsh v. Kirschner, 31 F. Supp. 2d 79 (D. Conn. 1998); Banerjee v. Roberts, 641 F. Supp. 1093 (D. Conn. 1986) (Cabranes, J.).

**C. LIABILITY OF THE CITY OF TORRINGTON**

The City of Torrington is liable for Title VII and CFEPA violations against its employees. E.g., Tomka v. Seiler Corp., 66 F.3d 1295 (2nd Cir. 1995); Perodeau v. Hartford, 259 Conn. 729, 792 A.2d 752 (2002).

The City of Torrington is liable for 42 U.S.C. § 1983 violations committed by its highest policy-setting employees for the issue involved, here, maintenance of a

harassment-free working environment in the Fire Department. Since the plaintiff's evidence shows that the harassing atmosphere was (a) created and perpetrated by the Fire Chief, and (b) knowingly permitted by the Personnel Director, the Mayor, and the Board of Public Safety (see Coleman and Schapp affidavits), municipal liability under Section 1983 has been established. Pembauer v. City of Cincinnati, 475 U.S. 469, 480-81 (1986); Kelley v. LaForce, 279 F.3d 129, 138 (1st Cir. 2002); Mandell v. County of Suffolk, 316 F.3d 368, 385 (2nd. Cir. 2003) (police commissioner had authority to set county-wide personnel policy); Weber v. Dell, 804 F.2d 796 (2d Cir. 1986); Keenan v. City of Philadelphia, 983 F.2d 459, 468-69 (3d Cir. 1992); Holloway v. Brush, 220 F.3d 767, 773 (6th Cir. 2000); Jones v. City of Chicago, 856 F.2d 985, 996 (7th Cir. 1988); Fairley v. Luman, 281 F.3d 913 (9th Cir. 2002); Davis v. Mason County, 927 F.2d 1473 (9th Cir. 1991);Grech v. Clayton County, 288 F.3d 1277 (11th Cir. 2002); Gibson v. City of Clarksville, 860 F. Supp. 450 (M.D. Tenn. 1993). "While municipal policy is most easily found in municipal ordinances, 'it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy.' Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999), quoting Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987). A single decision by an official with final policymaking authority can impose municipal liability even in the absence of any pattern or practice. Brown v. Bryan County, 219 F.3d 450, 459 (5th Cir. 2000).

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to

represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978). When a policymaker becomes aware of an ongoing unconstitutional act and does not exercise his power to stop that act, his inaction is the same as an affirmative action violating those rights. "A decision by municipal policymakers on a single occasion may result in municipal liability under 42 U.S.C. § 1983 for actions it officially sanctioned or ordered." Dixon v. Lowery, 302 F.3d 857, 867 (8th Cir. 2002); Williams v. Butler, 863 F.2d 1398, 1401 (8th Cir. 1988).

**D.   LIABILITY OF GRYNIUK AND GRITT**

The affidavit of Timothy Schapp establishes that defendants Gryniuk and Gritt, with full knowledge of the abusive atmosphere in the Fire Department, not only condoned it but punished Deputy Chief Schapp for speaking out against it. Clearly this evidence is sufficient to establish their personal liability under Section 1983 and the state law claims for the injuries suffered by this plaintiff and all others in the department victimized by that atmosphere.

**E.   CONSPIRACY**

Conspiracy is not, at least in this case, a separate cause of action; rather, it furnishes the basis for joint and several liability of all the co-conspirators in perpetrating the sexually hostile and abusive working environment from which the plaintiff and other Fire Department employees suffered. "Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed,

in terms, to have that design, and to pursue it by common means. If it is proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another part of the same, so as to complete it, with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object." Regina v. Murphy, 8 C. & P. 297, 310 (1837) (Coleridge, J.). See Pierce v. United States, 252 U.S. 239, 250 (1919).

The leading case on Section 1983 conspiracies is Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970). The plaintiff in that case had participated in a sit-in demonstration to protest the segregation of a public library. After the police chief told the group that the library had been closed, the group crossed the street to purchase lunch at the defendant's lunch counter. The plaintiff alleged that a police officer entered the store and observed the integrated group sitting together. Shortly thereafter, a waitress refused service. Upon leaving the restaurant, the plaintiff was arrested on a false charge of vagrancy by the same officer who had observed her at the lunch counter. In support of its summary judgment motion, the defendant presented affidavits of its manager and employees attesting that they had not seen or communicated with any police officer. Reversing the order granting summary judgment, the Supreme Court (Harlan, J.) held that the mere presence of the officer was sufficient to permit an inference of conspiracy. "If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a 'meeting of the minds' and thus reached an understanding that petitioner should be refused service." 398 U.S. at 155. Conspiracies typically must be proven by inference from such concurrent conduct and

proof in that manner is entirely sufficient. Thus, the fact that police officers investigating an automobile accident who permitted the wrongdoers to leave the scene during the investigation without submitting to alcohol testing, combined with their failure to conduct other basic on-site investigative procedures, permitted an inference of a conspiracy between the investigating officers and the drunken drivers to cover up the wrongdoing of the latter in violation of the victims' First Amendment right of access to the courts. Delew v. Wagner, 143 F.3d 1219 (9th Cir. 1998).

Civil conspirators are liable for acts done in furtherance of some purpose of the conspiracy even if they are without knowledge of the specific acts. El Ramo, Inc. v. First National Bank of Nevada, 406 F.2d 1205 (9th Cir.), cert. denied, 396 U.S. 875 (1968). Thus, evidence of a conspiracy between civilians and police offices to carry out unconstitutional activities will be sufficient to impose Section 1983 liability upon the civilians. E.g., James v. Sadler, 909 F.2d 834 (5th Cir. 1990); Lewis v. Pearson Foundation, Inc., 908 F.2d 318 (8th Cir. 1990); State of New Mexico ex rel. Candelaria v. City of Albuquerque, 768 F.2d 1207 (10th Cir. 1985). The affidavit evidence of Ms. Coleman and Deputy Chief Schapp sufficiently establishes a conspiracy claim against all defendants under Section 1983.

### F.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM

The evidence in this case, which includes the affidavits of Carpenter and Schapp, demonstrates that right up to the time that the plaintiff filed his EEOC and CHRO complaint, the Torrington Fire Department was the scene of constant sexually aggressive,

humiliating and assaultive behavior by Chief Johnson, known to and condoned by the Mayor, the Personnel Director, and the Board of Public Safety. This included physical sexual assaults upon male firefighters (one in the presence of his child) and upon Ms. Carpenter. The Chief thought nothing of parading around naked or nearly so. He considered all of his actions "fun" and was encouraged in this view when the Personnel Director and Board of Public Safety imposed harsh discipline upon Deputy Chief Schapp for complaining about it.

A hostile work environment harassment case, to succeed, requires evidence "that the workplace is permeated" to a degree "that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000); Mack v. Otis Elevator Co., 326 F.3d 116 (2nd Cir. 2003). However, "[i]t is not how long the sexual innuendos, slurs, verbal assaults, or obnoxious course of conduct lasts. The offensiveness of the individual actions complained of is also a factor to be considered in determining whether such actions are pervasive." Carrero v. New York City Housing Auth., 890 F.2d 569, 578 (2d Cir. 1989). See Howley v. Town of Stratford, 217 F.3d 141 (2d Cir. 2000) (single incident of severe verbal abuse sufficient to establish hostile environment case). The court must consider "the totality of the circumstances." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect

on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." Harris v. Forklift Systems, Inc., 510 U.S.17, 23 (1993). See Hostetler v. Quality Dining, Inc., 218 F.3d 798 (7th Cir. 2000) (employee's reaction to the allegedly harassing conduct is relevant to, and may be dispositive of, determination whether it created a hostile work environment). "We have reminded district courts, however, that 'the appalling conduct alleged in prior cases should not be taken to mark the boundary of what is actionable....[T]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Id.* at 70, quoting Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 439 (2d Cir. 1999). "The fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Ibid.*, quoting Torres v. Pisano, 116 F.3d 625, 631 (2d Cir.), *cert. denied*, 522 U.S. 997 (1997).

Sexual harassment is not limited to sexual propositioning, although that of course is sufficient. "[O]ffensive language or behavior about women in general and women in the workplace, and non-sexual actions directed toward a plaintiff in order to interfere with her work...; isolated incidents occurring within her hearing of women being called 'heifers' and being degraded for their inability to accomplish tasks as well as men; being subjected to false alarms and practical jokes, such as her dinner being burned,...; and the Bible verse

concerning women's proper submissive role being placed in her locker. This conduct constitutes severe and pervasive harassment....: <u>Pollare v. E.I. DuPont de Nemours Co.</u>, 213 F.3d 933, 942 (6th Cir. 2000). A single physical act can be sufficient to sustain a hostile work environment claim. <u>Lockhard v. Pizza Hut</u>, 162 F.3d 1062 (10th Cir. 1998). Evidence that the alleged harasser "stared at [the plaintiff's] body, made inappropriate sexual comments to her, and told her that she could have all the power she wanted through him....held private meetings with her, invited her to join him at [employer] functions, suggested that they meet at work on the weekend, and moved her desk into his line of sight" was sufficient to establish the plaintiff's claim of a hostile work environment. <u>Williams v. City of Kansas City, Missouri</u>, 223 F.3d 749, 753 (8th Cir. 2000).

In a Title VII hostile work environment case, the plaintiff must show a specific basis for imputing the misconduct to the employer. Such a basis exists when the misconduct is perpetrated by a supervisor of the plaintiff. <u>Mac v. Otis Elevator Co.</u>, 326 F.3d 116, 122-23 (2nd Cir. 2003). A plaintiff asserting that her employer is liable for the unlawful actions of her co-workers is obligated to show that the employer knew or should have known of the misconduct and unreasonably failed to take prompt and appropriate corrective action. <u>Burlington Industries v. Ellerth</u>, 524 U.S. 742 (1998); <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 154 (2d Cir. 2000); <u>Fenton v. HiSAN, Inc.</u>, 174 F.3d 827, 830 (6th Cir. 1999). Evidence that the plaintiff told a supervisor about the wrongdoing is sufficient to establish the notice element of this test. <u>Pollard v. E.I. DuPont de Nemours Co.</u>, 213 F.3d 933, 943 (6th Cir. 2000); <u>Breda v. Wolf Camera & Video</u>, 222 F.3d 886 (11th Cir. 2000). "[I]f harassment continues after complaints are made, reasonable jurors may disagree about

whether an employer's response was adequate." <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 72 (2d Cir. 2000); <u>Pascal v. Storage Technology Corp.</u>, 152 F. Supp. 2d 191, 210 (D. Conn. 2001). "Factors in assessing the reasonableness of remedial measures may include...whether or not the measures ended the harassment." <u>Carter v. Chrysler Corp.</u>, 173 F.3d 693, 702 (8th Cir. 1999). "If the evidence creates an issue of fact as to whether the employer's action is effectively remedial and prompt, summary judgment is inappropriate." <u>Richardson v. New York State Dep't of Correctional Service</u>, 180 F.3d 426, 440 (2d Cir. 1999), *quoting* <u>Gallagher v. Delaney</u>, 139 F.3d 338, 348 (2d Cir. 1998).

### G.   *PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM*

The evidence in this case shows that the plaintiff complained about the sexually hostile working environment and was perceived as being associated with Deputy Chief Schapp whose complaints were more persistent and forceful than those of the plaintiff. The defendants first claim that complaining about a working environment which violates Title VII is not protected speech. That is a mistake.

A deputy sheriff's statement in the presence of a newspaper reporter, criticizing the sheriff for requiring only African-American deputies to attend a meeting, was held to be on a matter of public concern and thus protected speech. <u>Victor v. McElveen</u>, 150 F.3d 451 (5th Cir. 1998). A police officer transferred from the elite mounted patrol to a training officer in the police academy, in response to her filing of a complaint with the EEOC about sexual harassment stated a valid claim for retaliation for the exercise of protected speech

in violation of the First Amendment. Sharp v. City of Houston, 164 F.3d 923 (5th Cir. 1999).

If the problem in the employee's job is that she is being discriminated against because of race or sex or age or disability, in violation of state or federal law, then the issue certainly is one of public concern since the public in enacting those laws was and remains concerned that they be obeyed by public officials. Hall v. Missouri Highway & Transportation Commission, 235 F.3d 1065, 1067 (8th Cir. 2000); Crain v. Board of Police Commissioners, 920 F.2d 1402, 1411 (8th Cir. 1990). "A personal aspect contained within the motive of the speaker does not necessarily remove the speech from the scope of public concern." Greer v. Amesqua, 212 F.3d 358, 371 (7th Cir. 2000). So a Transit Authority worker who publicly complained about lack of safety protections on his job was held to have been speaking about matters of such great public concern that the defendants' argument that these were purely personal issues "borders on the frivolous." Munafo v. Metropolitan Transp. Authority, 285 F.3d 201, 211-12 (2nd Cir. 2002). Even if the employee's speech is predominantly concerned with personal matters, the presence therein of matters of public concern will afford that speech First Amendment protection. At most, a Pickering-style balancing test might be employed to see just how much protection is appropriate. Finn v. New Mexico, 249 F.3d 1241 (10th Cir. 2001).

An assistant city administrator's statements to an alderman that rumors were circulating that the city administrator was having an extramarital affair with a city employee and that the city employee was receiving in return benefits to which she was not entitled, although arguably the basest sort of intra-office gossip, was held to be a matter of public

concern protected by the First Amendment since public funds were involved. Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). A fire department shift captain's vocal concern about the men downloading porn during their off hours likewise was held to be speech on a matter of public concern, and thus protected. Hufford v. McEnaney, 249 F.3d 1142 (9th Cir. 2001). The public complaint of a female employee about the governmental employer's assertedly inadequate response to sexual harassment issues in the workplace is on a matter of public concern and thus protected. Schuler v. City of Boulder, 189 F.3d 1304, 1308 (10th Cir. 1999).

"[W]hen the Supreme Court in its cases establishing and bounding the rights of public employees to exercise free speech limited those rights to speech on matters of 'public concern,' they did not mean matters of transcendent importance, such as the origins of the universe or the merits of constitutional monarchy; they meant matters in which the public might be interested, as distinct from wholly personal grievances -- which whether or not protected by the First Amendment are too remote from its central concerns to justify judicial interference with the employment relation, Connick v. Myers, 461 U.S. 138, 147 (1983) -- and casual chit-chat, which is not protected by the First Amendment at all. Swank v. Smart, 898 F.2d 1247, 1251 (7th Cir. 1990)." Dishnow v. School Dist. of Rib Lake, 77 F.3d 194, 197 (7th Cir. 1996) (Posner, C.J.). Thus, the plaintiff in Brown v. Disciplinary Committee of Edgerton Volunteer Fire Dept., 97 F.3d 969 (7th Cir. 1996), engaged in protected free speech when he publicly criticized a decision to change the name of the "Edgerton Fire Department" to "Edgerton Fire District." And a public employee fired

because she reported an incident of sexual harassment had in so complaining spoken on a matter of public concern. Azzaro v. County of Allegheny, 110 F.3d 968 (3d Cir. 1997).

"[P]laintiffs' interest in communicating ethnic pride as members of the NYPD is not necessarily a matter only of private concern. A statement is of public concern if, in light of 'the content, form and context of [that] statement, as revealed by the whole record,' it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'...The parades in which plaintiffs seek to march...are themselves about ethnic pride and celebrating ethnic participation in the civic life of New York City." Latino Officers Association, New York, Inc. v. The City of New York, 196 F.3d 458, 466 (2d Cir. 1999). Citing Connick v. Myers, 461 U.S. 138, 146 (1983); Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999).

Moreover, the plaintiff's allegation that he was retaliated against because of his perceived association with Deputy Chief Schapp states a First Amendment *association* claim under well-established law.

The First Amendment protects, of course, the right of "expressive association" -- "the right of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as speech, assembly, the exercise of religion, or petitioning for the redress of grievances" -- as well as the expression itself. Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984); City of Dallas v. Stanglin, 490 U.S. 19, 23-25 (1989); Sanitation and Recycling Industry, Inc. v. City of New York, 107 F.3d 985, 995-96 (2d Cir. 1997).

Winik-Nystrup v. Manufacturers Life Ins. Co., 8 F. Supp. 2d 157 (D. Conn. 1998) (Arterton, J.), involved an employee discharged for taking a vacation with a friend who worked for a competitor of her employer. The suit arose in the context of a state statute prohibiting private employers from infringing the First Amendment rights of their employees. The court, denying the defendant's motion for summary judgment, noted that there are two forms of association protected by the First Amendment: intimate association and expressive association. Citing Roberts v. United States Jaycees, 468 U.S. 609 (1984). The court noted a paucity of authority about what protection is afforded in the areas where these two concepts overlap, such as dating and what the Seventh Circuit has called "chit-chat": "[B]ecause chit-chat is important to the participants,...the freedom to engage in it is an aspect of liberty protected by the due process clause, along with the freedom to exercise other harmless liberties....[A] law that forbade dating or, for that matter, forbade an off-duty policeman to offer a ride on his motorcycle to a coed -- all of these hypothetical laws would infringe liberty. If arbitrary, they would be deemed to violate 'substantive due process,' the term for the protection that the due process clause has been held to extend to substantive rights not listed in the Bill of Rights. Some of these nonenumerated substantive liberties receive broader protection ... under such rubrics as 'right of privacy,' 'fundamental right,' and 'right of association' in a nonexpressive sense. And sometimes these 'fundamental rights' pop up in the employment setting and when they do it is sometimes suggested -- erroneously in light of Roberts and Stanglin -- that the First Amendment protects nonexpressive association." Swank v. Smart, 898 F.2d 1247, 12151-52 (7th Cir. 1990). Quoted in Wionik-Nystrup at 162. Citing City of Dallas v. Stanglin, 490