U.S. 19 (1989) (holding that an ordinance limiting the use of dance halls to persons between the ages of 14 and 18 did not violate the right of association).

Denying the defendant's motion for summary judgment, the court held that the defendant's attempt to distinguish between the rights of expressive and intimate association, holding that the twain never could meet, was unsupported in both fact and law. Some intimate association also is expressive; and it plainly is not true that intimate association has no constitutional protection. "Dating and other social relationships are worthy of some protection under the first amendment, even though these activities may lack an overt political, religious or educational purpose. We do not limit protection to words that are 'strident, contentious, or divisive,' but extend it to 'quiet persuasion, inculcation of traditional values, instruction of the young, and community service.' Our Constitution is designed to maximize individual freedoms within a framework of ordered liberty. We conclude that dating and other social associations to the extent that they are expressive are not excluded from the safeguards of the first amendment." Ibid., quoting IDK Inc. v. County of Clark, 836 F.2d 1185, 1194 (9th Cir. 1988), and Roberts, supra, 468 U.S. at 636 (O'Connor, J., concurring). Having insufficient information about the details of the relationship between the plaintiff and her friend in the case at bar, and noting that the burden in the case of the summary judgment motion was upon the defendant, the court denied the defendant's motion.

"The right to intimate association is protected by both the First Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution. Adler v. Pataki, 185 F.3d 35, 42 (2d Cir. 1999). Where the state seeks to penalize an employee with loss

of a job on account of the employee's intimate relationship with another, the First Amendment, and not the Due Process Clause, is the proper Constitutional vehicle through which an aggrieved employee may seek redress. See Id. at 44.

The defendants claim that the plaintiff did not suffer any adverse employment action. In fact, the evidence shows that he did receive a series of warnings and was subjected to one disciplinary proceeding which he has testified was because of his exercise of the aforementioned First Amendment rights. The proximity in time between his exercise of those rights and the disciplinary actions taken supports his claim sufficiently to require submitting it to the jury. See Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003) (holding that there was sufficient proximity in time when the adverse employment actions followed the exercise of protected speech by eight months, five months and three months).

Moreover, although the Second Circuit clearly does require adverse employment action as a necessary element of a First Amendment retaliation claim in the public employment context, e.g., Heil v. Santoro, 147 F.3d 103, 109-10 (2d Cir. 1998); that view is mistaken. See Power v. Summers, 226 F.3d 815, 820-21 (7th Cir. 2000) (Posner, J.).

**H.    THE PLAINTIFF'S EQUAL PROTECTION CLAIM**

The defendants do not make a separate analysis of their argument against the plaintiff's equal protection claim, adopting instead their arguments on other issues. In response, therefore, it is sufficient to note that subjecting the plaintiff to different treatment because of his exercise of another constitutionally protected right is a sufficient basis for

an equal protection claim. Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12 (2d Cir. 1999); Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996); Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995); LaTrieste Restaurant and Cabaret, Inc. v. Village of Port Chester, 40 F.3d 587 (2d Cir. 1994); Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1352 (2d Cir. 1994); FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2d Cir. 1992).

## I. THE PLAINTIFF'S DUE PROCESS CLAIM

The plaintiff has presented in this court a classic case of substantive due process deprivation. "A substantive due process claim...alleges not that the state's procedures are somehow deficient, but that the state's conduct is inherently impermissible, regardless of any protective or remedial procedures it provides....It is based on 'the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court.'" Ramos v. Gallo, 596 F. Supp. 833, 837 (D. Mass. 1984). Quoting Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980). Cf. Rochin v. California, 342 U.S. 165, 169 (1952) (Frankfurter, J.) (substantive due process involves "those personal immunities which...are so rooted in the traditions and conscience of our people as to be ranked as fundamental...."). As Justice Cardozo explained it, substantive due process protects those rights without which "neither liberty nor justice would exist...." Palko v. Connecticut, 302 U.S. 319, 326 (1937). See Black, A New Birth of Freedom: Human Rights, Named and Unnamed, (Grosset/Putnam 1998); Tribe, "Pursuing the Pursuit of Happiness," The New York Review, Sept. 24, 1998, p. 30. "The overarching objective of this doctrine is to prevent government officials from 'abusing [their] power, or employing it as an instrument of oppression.'" Conroe Creosoting

Co. v. Montgomery County, 249 F.3d 337, 341 (5th Cir. 2001), quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). "The protections of substantive due process are available only against egregious conduct...." Smith v. Half Hollow Hills Central School District, 298 F.3d 168, 173 (2nd Cir. 2002). Egregious conduct is precisely what is presented by this case.

### J. THE "EXHAUSTION OF COLLECTIVE BARGAINING REMEDIES" ISSUE

Section 31-51bb of the General Statutes expressly provides that "[n]o employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the State or Federal Constitution or under a state statute solely because the employee is covered by a Collective Bargaining Agreement...." See Genovese v. Gallo Wine Merchants, Inc., 226 Conn. 475, 481, 628 A.2d 946 (1993).

The defendants admit that there is no exhaustion requirement applicable to the plaintiff's constitutional and statutory claims. They do assert, however, that there is an exhaustion requirement for the plaintiff's commonlaw claims. They have no authority for this other than the silence of the statute on that topic. They fail to note, however, that even if there were an exhaustion requirement, it would apply only to the plaintiff's claims against the employer and not to his claims against the individual defendants.

### K. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The plaintiff's claim for intentional infliction of emotional distress, directed against the individual defendants, is for that reason not barred by any immunity that may attach to

the City itself. The defendants claim, however, that their actions were not "extreme and outrageous" and that the plaintiff's emotional distress was insufficiently severe.

Whether the conduct alleged by plaintiff was "extreme and outrageous" within the meaning of established law is a jury question, and the court should not usurp the role of the jury unless no reading of the facts alleged by the plaintiff could constitute the tort. As the court held in Mascia v. Faulkner, No. 349036, pp. 12-13 (New Haven J. D. 1995) (Fracasse, J.): "Summary judgment is inappropriate for issues involving 'motive, intent and subjective feelings and reactions,' United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 376. [Defendant's] intent, **whether the conduct was extreme and outrageous**, whether [defendant's] conduct caused the [plaintiffs'] distress, and the severity of the [plaintiffs'] distress are all genuine issues of material fact for the jury." Cf., e.g., Berry v. Loyseau, 223 Conn. 786, 807 (1992); Mather v. Griffin Hospital, 207 Conn. 125, 138 (1988); Gilman v. Gilman, 46 Conn. Sup. 21, 23 (1999); Lugo v. Rodriguez, 8 CSCR 244 (1992); Hansen v. Berger, Lehman Assoc., 9 CSCR 1243, 12 Conn. L. Rptr. No. 17, 555 (1994). See also Batick v. Seymour, 186 Conn. 632, 646-47 (1982). Courts in sister jurisdictions take the same position. E.g., Shubbe-Hirt v. Baccigalupi, 94 F.3d 111 (3d Cir. 1996); Halio v. Lurie, 15 A.D.2d 62, 222 N.Y.S.2d 759, 764 (2d Dept. 1961); Murphy v. Murphy, 486 N.Y.S.2d 457, 459 (3d Dept. 1985); Flatley v. Hartmann, 138 A.D.2d 345, 525 N.Y.S.2d 637, 638 (2d Dept. 1988); Richard v. Armon, 144 A.D.2d 1, 4, 536 N.Y.S.2d 1014, 1016 (2d Dept. 1989); Collins v. Willcox Inc., 158 Misc.2d 54, 57, 600 N.Y.S.2d 884, 886 (N.Y. County, 1992).

Many courts have held facts no more offensive than those alleged here to be sufficiently "extreme and outrageous" to meet that element of the wrong.

In <u>Berry v. Loyseau</u>, 223 Conn. 786 (1992), an employee was threatened by one employer and assaulted by another. In <u>Benton v. Simpson</u>, 78 Conn. App. 746 (2003), a supervisor's repeatedly telling three subordinates that they "made him sick" and were a "cancer" in the company not only was sufficiently extreme and outrageous to justify litigation but was sufficient to establish probable cause for a $500,000 attachment of the supervisor's personal assets. In <u>Whelan v. Whelan</u>, 41 Conn. Sup. 519, a husband had falsely told his wife he was suffering from AIDS. In <u>Brown v. Ellis</u>, 40 Conn. Sup. 165 (1984), the plaintiff's job supervisor had given him work assignments in disregard of his fear of heights.[1] In <u>Mellaly v. Eastman Kodak Co.</u>, 42 Conn. Sup. 17 (1991), the plaintiff's supervisor had taunted him about his alcoholism. In <u>Centi v. Lexington Health Care Center</u>, 1997 Conn. Super. LEXIS 1202 (Licari, J.), the court held that the actions of the defendant in terminating the plaintiff's employment were sufficiently extreme and outrageous to be submitted to a jury for determination because the termination of employment was accompanied by a change of work assignments, the setting of unrealistic goals for the employee, the supervisor's coming to the employee's house on a Sunday, and

---

[1] "An additional consideration in determining whether extreme and outrageous behavior exists is whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity; behavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional turmoil." <u>Honaker v. Smith</u>, 256 F.3d 477, 492 (7th Cir. 2001).

the giving of pretextual reasons for termination. In Gilman v. Gilman, 46 Conn. Sup. 21 (1999), the defendant had telephoned the police and falsely reported that her ex-husband was smoking marijuana in his house, at a time when she knew he was entertaining a new girlfriend, resulting in disruption of their dinner. In Nance v. M.D. Health Plan, Inc., 47 F. Supp. 2d 276 (D. Conn. 1999), the court held that an employer's questioning that signaled to others its belief that the plaintiff was a homosexual could be found sufficiently "extreme and outrageous" in the eyes of a jury to constitute a basis for a finding of intentional infliction of emotional distress. In Caesar v. Hatford Hospital, 46 F. Supp. 2d 174 (D. Conn. 1999), the court held that an employer's acts in discriminating against the plaintiff and making false reports regarding her to the Department of Public Health were sufficiently "extreme and outrageous" to state a claim for intentional infliction of emotional distress. In Kennedy v. Coca-Cola Bottling Co. of New York, Inc., 170 F. Supp. 2d 294, 298 (D. Conn. 2001), the court held that the actions of an employer in disclosing to the employees and supervisors involved in wrongdoing the plaintiff's complaints that they had engaged in a variety of illegal or improper activities at the workplace, with the result that the plaintiff suffered retaliation and harassment, was conduct sufficiently "extreme and outrageous" to go to a jury. In McKelvie v. Cooper, 190 F.3d 58 (2d Cir. 1999), the Second Circuit, applying Connecticut law, held that the alleged actions of police officers in abusing the patron of a bar during a search of the premises could be found by a jury to be sufficiently extreme and outrageous to warrant a verdict in the plaintiff's favor. In Moss v. Town of East Haven, 2001 WL 1002684, at *2 (Conn. Super. 2001), the court held that a police officer's conduct at the plaintiff's home in threatening the plaintiff "with his hand on his

exposed service revolver" while not allowing the plaintiff to leave, was sufficiently "extreme and outrageous" to warrant submitting the action to a jury's determination. In <u>Bell v. Board of Education</u>, 55 Conn. App. 200, 739 A.2d 321 (1999), the court held that allegations that the defendant imposed a system of education which created a pervasive atmosphere of fear and terror in an elementary school classroom over a two-year period adequately alleged conduct which a jury could find was "extreme and outrageous".[2] See also <u>Baird v. Rose</u>, 192 F.3d 462 (4th Cir. 1999), holding that the actions of a school teacher in humiliating a student in class because of her clinical depression was "extreme and outrageous" under Virginia law. In <u>Rosten v. Circuit Wise, Inc.</u>, 7 C.S.C.R. 1147 (1992), an employer discharged the plaintiff because of her union organizing activities. In <u>Lugo v. Rodriguez</u>, 8 C.S.C.R. 244 (1992), an attorney intentionally delayed in releasing a lis pendens. Breach of an oral agreement to restructure a loan was held sufficiently extreme and outrageous in <u>Connecticut National Bank v. Montanari</u>, 9 CSCR 196 (1994). Surveillance by an insurance company to determine the validity of a claim was held sufficiently extreme and outrageous to withstand a motion to dismiss in <u>Bosco v. MacDonald</u>, 13 Conn. L. Rptr. No. 10, 312 (1995). In a similar case, the United States Court of Appeals for the First Circuit, applying Connecticut law, held that a union officer's

---

[2] In <u>Appleton v. Board of Education</u>, 254 Conn. 205 (2000), the Supreme Court cited <u>Bell</u> with approval. <u>Appleton</u> held that an employer's actions in "condescending" to the plaintiff, suggesting to her daughter that she should "take a few days off from work" and having her escorted off the premises by police did not reach the minimum standard articulated in <u>Bell</u> and other cases for conduct which is "extreme and outrageous".

conduct over a period of three weeks in driving by a union member's home several times a day and following him when he left his house was sufficiently extreme and outrageous to support a jury verdict in the member's favor. Johnson v. Teamsters Local 559, 102 F.3d 21 (1st Cir. 1996). See also Anderson v. Drapp, 35 Conn. L. Rptr. No. 11, 415 (2003) (Doherty, J.), holding that criminal stalking over a long period was "extreme and outrageous" within the meaning of the common law. A job supervisor's false accusation of lying, made in the presence of one of the plaintiff's fellow employees, is sufficiently "extreme and outrageous" to warrant submitting the case to the jury. Musacchio v. Cooperative Educational Services, 1995 WL 681664, 1 Conn. Ops. 1319 (1995). Cf., Decampos v. Kennedy Center, Inc., 1990 WL 264687 at * 4 (1990). An allegation that a police officer had written a letter in support of his former girlfriend, who was a fellow officer, in which he falsely asserted that a person who had brought charges against her was lying, asserted conduct that was sufficiently extreme and outrageous to survive summary judgment. Stack v. Jaffee, 248 F. Supp. 2d 100, 104-05 (D. Conn. 2003) (Burns, J.). A cause of action for intentional infliction of emotional distress was stated in an employment context when the plaintiff alleged that his supervisor "severely harassed and mistreated [him], and created a situation where he was denied effective assistance in the performance of his job, open communication and fairness, unfairly placed on a 60-day performance improvement plan and then constructively fired." Grossman v. Computer Curriculum Corp., 131 F. Supp. 2d 299, 310-11 (D. Conn. 2000). An allegation that an employer framed an employee for theft, terminated her with that as an excuse, and then publicly branded her a thief was sufficiently extreme and outrageous to survive a motion to strike in White v.

Thornton Oil Corp., 32 Conn. L. Rptr. No. 14, 505 (2002). The action of a police officer in sending a taunting Christmas card to a pretrial detainee at the Hartford Correctional Center was sufficiently "extreme and outrageous" to survive a motion to strike. Johnson v. Martin, 2 Conn. Ops. 764, 1996 WL 383351, at *3 (Conn. Super. 1996) (Sheldon, J.). In Talit v. Peterson, 44 Conn. Sup. 490, 497-98 (1997) (Blue, J.), the allegation that the defendants had subjected the plaintiff, a coworker, to unjustified criticism and caused her to lose her job for filing a grievance was held sufficiently extreme and outrageous to survive a motion to strike. The disputed allegation that the defendant physicians had falsely reported to police that the plaintiff had physically abused his wife, causing the plaintiff to be arrested, were potentially sufficiently extreme and outrageous to require denial of a motion for summary judgment in Pantaleo v. Ravski, 19 Conn. L. Rptr. No. 1, 28 (1997) (Silbert, J.). Terminating an employee in retaliation for his union activities has been held to be sufficiently "extreme and outrageous" to support a jury verdict and award of substantial damages for intentional infliction of emotional distress. Mihalick v. Cavanaugh, 26 F. Supp. 2d 391, 396 (D. Conn. 1998). The action of a school official in falsely reporting suspected child abuse to the Department of Children and Families was held sufficiently "extreme and outrageous" to survive a motion for summary judgment in Chain v. Biddle, No. CV-97-0407047 (N.H. Sup. Ct. 1999) (Licari, J.); and to survive a Motion to Strike in Greco v. Anderson, 28 Conn. L. Rptr. No. 17, 605 (2001) (Shortall, J.). Assigning the plaintiff to a work station close to that of a co-employee who had threatened her and whom she feared was held sufficiently "extreme and outrageous" to survive a motion to strike in Karanda v. Pratt & Whitney Aircraft, 24 Conn. L. Rptr. 521 (1999).

All of these cases found the conduct alleged to be such that a jury representing a fair cross-section of the community should determine whether it was "extreme and outrageous" as required by the law. Ultimately, it is a community standards test that applies. For a court to strike a complaint at the pleading stage, or to grant summary judgment prior to trial, constitutes a judicial determination as a matter of law that the alleged conduct is acceptable in our society. In any case where it is not obvious that the conduct *is* acceptable, the court should defer to the collective wisdom of the jury. Faraclas v. Botwick, 32 Conn. L. Rptr. No. 11, 414 (2002).

Other jurisdictions agree with Connecticut's prevailing view that a very wide range of human interaction, when presented as the tort of intentional infliction of emotional distress, can withstand a motion to dismiss. E.g., Newby v. Alto Riviera Apartments, 60 Cal. App. 3d 288, 131 Cal. Rptr. 547 (1976) (a landlord's threats to evict a tenant for organizing other tenants); Alcorn v. Anbro Engineering, Inc., 2 Cal. 3d 493, 468 P.2d 216 (1970) (racial taunting by a supervisor); Contreras v. Crown Zellerbach Corp., 88 Wash. 2d 735, 741 (1977) (racial jokes by a supervisor); Carroll v. Beyeriche Landesbank, 125 F. Supp. 2d 58 (S.D.N.Y. 2000) (sexual harassment of a female employee); Patterson v. Xerox Corp., 901 F. Supp. 274, 279 (N.D. Ill. 1995) (harassment of pregnant employee by supervisor); Pavilon v. Kaferly, 204 Ill. App. 3d 235, 149 Ill. Dec. 549, 561 N.E.2d 1245, 1251 (1990) (employer pressured employee for dates, offered her money for sexual favors, and threatened to rape or kill her); Milton v. Illinois Bell Tel. Co., 101 Ill. App. 3d 75, 56 Ill. Dec. 497, 427 N.E.2d 829, 832 (1981) (employer engaged in pattern of harassing employee to force her to falsify work reports); Mejia v. City of New York, 119 F. Supp. 2d

232, 285-86 (E.D.N.Y. 2000) (racial remarks by a police officer[3]); Brown v. Muhlenberg Township, 269 F.3d 205 (3d Cir. 2001) (police officer shot plaintiff's dog); Bundren v. Superior Court, 145 Cal. App. 3d 784, 791 (1983) (hospital's attempt to collect debt while debtor was still hospitalized); Wilson v. Monarch Paper Co., 939 F.2d 1138 (5th Cir. 1991) (reassigning a college-educated executive to perform janitorial duties); Mroz v. Lee, 5 F.3d 1016 (6th Cir. 1993) (defamation); Shubbe-Hirt v. Baccigalupi, 94 F.3d 111 (3d Cir. 1996) (supervisor's verbal abuse of female subordinate after telling fellow supervisors he was going to "trim her bush"); Ross v. Saint Augustine's College, 103 F.3d 338 (4th Cir. 1996) (faculty retaliation against student for testifying on behalf of a professor in a reverse discrimination case); Jackson v. Brown, 904 P.2d 685 (Utah 1995) (groom's last-minute cancellation of wedding). Often, it is not the discrete, individual acts that rise to the level of extreme and outrageous conduct, but the pattern of such discrete acts that does so. E.g., Davignon v. Clemmey, 322 F.3d 1, 6-7 (1st Cir. 2003) ("a long and relentless campaign of harassment and intimidation").

This court does not "sit as a seventh juror." The plaintiff has a right to have a jury determine whether the conduct in question is sufficiently outrageous to justify an award of damages. Berry v. Loyseau, supra, 223 Conn. at 807; Mather v. Griffin Hospital, 207 Conn. 125, 138 (1988).

---

[3] The court also held that a lower standard for outrageousness applies when the defendant is a public official, like a police officer, because misconduct by one in a position of power is by its very nature more offensive than similar misconduct by a private citizen.

Finally, as to the claim that there is insufficient evidence of actual emotional distress in this case, Connecticut law is clear that medical evidence is not necessary to support a judgment for emotional distress damages. The credible testimony of the victim is sufficient. Berry v. Loiseau, 223 Conn. 786, 811, 614 A.2d 414 (1992); Schanzer v. United Technologies Corp., 120 F. Supp. 2d 200, 217 (D. Conn. 2000). In Opielowski-Brouwer v. Haddam Hills Academy, 31 Conn. L. Rptr. No. 6, 193 (2002) (Shapiro, J.), the court refused to reduce a jury's award of $260,000 for emotional distress caused by an employer's verbally threatening and abusive conduct during the plaintiff's wrongful termination from employment, in the absence of any medical evidence. Emotional distress consisting of a loss of joy in the everyday events of life, characterized by no longer singing in the shower, with no professional attention whatsoever, is sufficient not only to establish this element of the tort but to support a substantial six-figure jury award. DeLaurentis v. City of New Haven, 220 Conn. 225, 597 A.2d 807 (1991). "Just as the fact of treatment is not sufficient to prove the existence of severe emotional distress, the absence of treatment does not preclude proof of severe emotional distress." Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 175 (D. Conn. 2003) (Underhill, J.) (holding that "memory loss and anxiety...are sufficiently serious that a reasonable jury could find for the plaintiff").

### L.     THE STATUTE OF LIMITATIONS DEFENSE

The defense as presented has two components: the claim that certain claims under Title VII and CFEPA are barred because they took place more than 300 days (Title VII) or six months (CFEPA) before the administrative complaint was filed with the EEOC and the CHRO; and the claim that certain claims under 42 U.S.C. § 1983 and Connecticut common

law took place more than three years before the suit was filed in 2002. See Lounsbury v. Jeffries, 25 F.3d 131, 133 (2d Cir. 1994).

To the extent that the plaintiff's complaint concerned a hostile working environment, the fact that some illustrations of that environment may have preceded his administrative complaint by more than 300 days does not prevent those incidents from being used as evidence of his claim so long as at least one discrete instance of a hostile environment occurred within the 300-day period. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 2072 (2002). To the extent that the plaintiff's complaint concerns violations of his constitutional or commonlaw rights, the earlier events are admissible in his favor under the continuing violation doctrine. Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982); Connecticut Light & Power Co. v. Secretary of Labor, 85 F.3d 89, 96-97 (2d Cir. 1996); Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994); Sabree v. United Brotherhood of Carpenters and Joiners, 921 F.2d 396, 400 (1st Cir. 1990); Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990); Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 182-83 (1st Cir. 1989); Jackson v. Kimel, 992 F.2d 1318, 1324 (4th Cir. 1993); Haithcock v. Frank, 958 F.2d 671, 677-78 (6th Cir. 1992); Palmer v. Board of Education, 46 F.3d 683 (7th Cir. 1995); Martin v. Nannie and The Newborns, Inc., 3 F.3d 1410 (10th Cir. 1993); Maloney v. Connecticut Orthopedics, P.C., 47 F. Supp. 2d 244, 248-29 (D. Conn. 1999); Velez v. City of New London, 903 F. Supp. 286, 290 (D. Conn. 1995); Wills v. Ferrandino, 830 F. Supp. 116 (D. Conn. 1993).

## M.   DEFENDANT JOHNSON'S QUALIFIED IMMUNITY DEFENSE

Defendant Johnson also asserts the affirmative defense of qualified immunity, claiming that the law was not clearly established that his conduct was unlawful. He has the burden on that defense. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Harlow v. Fitzgerald, 457 U.S. 800 at 815 (1982); Schechter v. Comptroller of the City of New York, 79 F.3d 265, 270 (2d Cir. 1996); Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996); Castro v. United States, 34 F.3d 106, 111 (2d Cir. 1994); DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001); Buenrostro v. Collazo, 973 F.2d 39, 44 (1st Cir. 1992); Tatro v. Kervin, 41 F.3d 9 (1st Cir. 1994); Maul v. Constan, 928 F.2d 784 (7th Cir. 1991); Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Benigni v. City of Hemet, 868 F.2d 307, 313 (9th Cir. 19-88).

To argue, as Johnson does, that the sort of egregious pattern of sexual abuse which he carried out during his reign of terror at the Torrington Fire Department was not clearly unlawful at the time, is almost laughable. The many cases cited in previous sections of this brief, and even in the briefs of the defendants, belie his claim. Moreover, he misunderstands the meaning of "clearly established law" in this context. Defendants like to argue that, unless the highest available court has ruled previously upon precisely the conduct in question, and unequivocally held it unlawful, they are entitled to get away with it on qualified immunity grounds. This stretches the doctrine beyond the breaking point. That view was decisively rejected by the Supreme Court in Hope v. Pelzer, 536 U.S. 730 (2002), the case in which Alabama prison guards had tied a prisoner to a hitching post as punishment. The Sixth Circuit had granted qualified immunity to the guards on the ground

that the precise case had not arisen previously. The test, the court held, is not whether the precise case has been decided before; rather it is "whether the state of the law...gave fair warning that their alleged [conduct] was unconstitutional." As the Fifth Circuit has pointed out, "[t]he easiest cases don't even arise. There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the official would be immune from damages liability because no previous case had found liability in those circum-stances." Doe v. Taylor Independent School Dist., 975 F.2d 137, 142 (5th Cir. 1992), quoting K.H. Through Murphy v. Morgan, 914 F.2d 846, 851 (7th Cir. 1990). Cf. McDonald v. Haskins, 966 F.2d 292, 293-94 (7th Cir. 1992). "A constitutional violation that is so patent that no violator has even attempted to obtain an appellate ruling on it can be regarded as clearly established even in the absence of pre-cedent." Anderson v. Romero, 72 F.3d 518, 526-27 (7th Cir. 1995) (Posner, C.J.).

"The fact that a statute has not been construed does not mean that there is no law, that anything goes....The clearest violations may never generate an appeal, just because there is no nonfrivolous ground for an appeal; and without an appeal there will be no au-thoritative judicial interpretation of the statute. It would be a considerable paradox to say that public officers have a license to commit statutory violations so outlandish that they have never been the subject of a published appellate decision....Suppose that the defendants had arrested [the plaintiff] for the possession of property given to him by his mother, on the theory that since mothers are notoriously soft-hearted any 'gift' from mother to son is actually a theft by the son....No reported case...has ever addressed this imagina-tive theory." Northen v. City of Chicago, 126 F.3d 1024, 1028 (7th Cir. 1997) (Posner,

C.J.). "[T]he absence of legal precedent addressing an identical factual scenario does not necessarily yield a conclusion that the law is not clearly established....Indeed, it stands to reason that in many instances 'the absence of a reported case with similar facts demonstrates nothing more than widespread compliance with' the well-recognized applications of the right at issue on the part of government actors." Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 251 (2nd Cir. 2001), quoting Eberhardt v. O'Malley, 17 F.3d 1023, 1028 (7th Cir. 1994). Cf., Sh.A. v. Tucumcari Municipal Schools, 321 F.3d 1285, 1288 (10th Cir. 2003).

## CONCLUSION

The motions for summary judgment should be denied.

Respectfully submitted:

JOHN R. WILLIAMS (ct00215)
51 Elm Street, Suite 409
New Haven, CT 06510
(203)562-9931
Fax: (203) 776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Attorney Martha A. Shaw at Howd & Ludorf, 65 Wethersfield Avenue, Hartford, CT 06114; Edward Maum Sheehy, Esq., at Williams, Cooney & Sheehy, LLP, 799 Silver Lane, Trumbull, CT 04212; and Albert G. Vasko, Esq., 140 Main Street, Torrington, CT 06790.

JOHN R. WILLIAMS