FILED
Oct 20  3 44 PM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE HEPBURN | : | |
| VS. | : | NO. 3:02CV1252 (MRK) |
| CITY OF TORRINGTON, MARQUAM JOHNSON, BOARD OF PUBLIC SAFETY OF THE CITY OF TORRINGTON, MARY JANE GRYNIUK and THOMAS GRITT | : | OCTOBER 19, 2003 |

## LOCAL RULE 56(a)2 STATEMENT

I   **RESPONSES TO DEFENDANT JOHNSON'S CLAIMS OF FACT:**

1. Agree.

2. Agree.

3. Agree.

4. Agree.

5. Agree.

6. Agree.

7. Agree.

8. Agree.

9. Agree.

10. Agree.

11. Agree.

12. Agree.

13. Agree.

14. Agree.

15. Agree.

16. Agree.

17. Agree.

18. Agree.

19. Agree.

20. Agree.

21. Agree.

22. Disagree because the statement, as made, is misleading. The plaintiff testified that when he complained to defendant Johnson, Johnson did not seem upset about the fact that the word was on the board; rather, he was upset that the plaintiff had written a memorandum on the subject rather than simply erasing the word. (Plaintiff's deposition, p. 165)

23. Agree.

24. Agree.

25. Agree that the plaintiff does not claim to have witnessed the many other incidents of sexual harassment perpetrated by defendant Johnson.

26. Agree.

27. Agree.

28. Agree.

29. Agree.

30. Agree.

31. Agree.

32. Agree.

33. Agree.

34. Agree.

35. Agree.

36. Agree.

37. Disagree because out of context. The phrase "discrimination" in the context of the union contract does not refer to discrimination within the meaning of Title VII. (See entire contract.)

38. Agree.

39. Agree.

40. Irrelevant. "The Supreme Court has held that Congress, in enacting Title VII, generally intended to eliminate the binding effect of prior administrative findings and provide a *de novo* trial on Title VII claims. See University of Tennessee v. Elliott, 478 U.S. 788, 795 (1986). The only exception to this rule is where an administrative finding is challenged and decided in state court resulting in a state court judgment on the same claim or issue." Raniola v. Bratton, 243 F.3d 610, 623-24 (2d Cir. 2001).

41. Agree.

42. Agree.

43. Agree.

44. Disagree. (Plaintiff's deposition transcript, p. 324-26)

45. Disagree. (Ibid.)

46. Disagree. (Ibid.)

47. Agree.

48. Disagree. The plaintiff does claim to have suffered adverse employment actions under Field; but having to work in a sexually hostile and degraded workplace is by definition an adverse employment action.

49. Agree.

50. Disagree. The plaintiff does claim to have suffered adverse employment actions under Field; but having to work in a sexually hostile and degraded workplace is by definition an adverse employment action.

## II    PLAINTIFF'S STATEMENT OF MATERIAL FACTS:

1. On 3/31/99 at approx. 12:00 p.m. Gayle Carpenter, defendant Johnson's secretary, was having a conversation with Deputy Chief Schapp. She was telling the Deputy Chief that her allergies were bad and she had to take steroids. Chief Johnson came out of his office and said "Won't it give you larger breasts? She was humiliated, embarrassed and upset. (Carpenter Interrogatory Responses, ¶ 18)

2. In April 1999 while looking at some paperwork Chief Johnson said to Ms. Carpenter: "Can't you finger it out ?" (Ibid.)

3. Chief Johnson referred to Ms. Carpenter as "Babe" on numerous occasions. (Ibid.)

4. Chief Johnson said to Ms. Carpenter: "if you weren't my secretary I'd kiss you." (Ibid.)

5. Chief Johnson made a remark about Ms. Carpenter's lipstick. (Ibid.)

6. Chief Johnson always referred to "whacking pee-pees" with regard to disciplining the fire fighters. (Ibid.)

7. On or about November 3, 1998 Ms. Carpenter was struck in buttocks with photograph album. She was extremely upset. She spoke to D/Chief Schapp about the incident. She told Training Officer Hepburn about Johnson's actions. (Ibid.)

8. On or 9/13/99, "BITCH" was written on chalkboard. T/O Hepburn conveyed to defendant Johnson Ms. Carpenter's feeling that this was sexually degrading. (Ibid.)

9. On or about 9/14/99 "BITCH = FEMALE DOG" appeared on chalkboard in the Workout Room. (Ibid.)

10. When Ms. Carpenter informed Chief Johnson of a medical appointment he responded: "is it terminal ?" (Ibid.)

11. Chief Johnson was allowed to enter the Fire Department Building during his suspension a number of times, making the suspension appear to be a joke. (Ibid.)

12. Chief Johnson would continually tell Ms. Carpenter that the Fire Department is "a man's world". (Ibid.)

13. Offensive language of a sexual nature was written in the mezzanine area at the Fire Department and it remained there for an extended time. (Ibid.)

14. Chief Johnson asked Ms. Carpenter in front of others if she was having a "hot flash". (Ibid.)

15. Chief Johnson struck Ms. Carpenter on the buttocks while she was faxing a letter in dispatching. (Ibid.)

16. Timothy Schapp was the Deputy Chief of the Torrington Fire Department. (Schapp CHRO Affidavit, ¶ 1)

17. On or about January, 1999, Deputy Chief Schapp reported to Mayor Gryniuk. that the Chief had engaged in inappropriate sexual behavior in the workplace which was very offensive and disturbing and were creating an intolerable and threatening work atmosphere. (Id. ¶ 3)

18. Deputy Chief Schapp also spoke with Board of Safety Commissioners Telman and Potter, expressing his concerns about the Chief's behavior to them. (Id. ¶ 5)

18. On another occasion, Chief Johnson grabbed an employee by the testicles. (Id. ¶ 10)

19. Private Michael Solani reported to Deputy Chief Schapp that Chief Johnson pulled down his sweatpants in front of Mike's two young sons on an occasion when Mr. Solani brought his sons into Headquarters for a visit. Mr. Solani expressed his disapproval of that incident to the Chief. (Id. ¶ 13)

20. Mary Robinson reported to Deputy Chief Schapp that the Chief had undressed in his office on more than one occasion, each time without closing the door. (Ibid.)

21. Lieutenant Charles Warner reported to Deputy Chief Schapp that he was working as the dispatcher one evening, in the presence of Chief Johnson and several Volunteer Fire Chiefs. On that evening, Lt. Warner made an error in dispatching a vehicle, and Chief Johnson instructed him to "pull out his pee pee so that he [Chief Johnson] could whack it." (Ibid.)

22. On June 1, 1999, Lieutenant David Starr informed Deputy Chief Schapp that after the Memorial Day Parade when the Color Guard was in formation, Chief Johnson was seen blowing into the ear of Private Mark Garrison. (Id. ¶ 14)

23. On June 2, 1999, Deputy Chief Schapp again met with Mayor Gryniuk. I expressed his inability to continue working under the hostile, threatening and inappropriately sexual work environment created by the unchecked actions of Chief Johnson. (Id. ¶ 16)

24. On June 9, 1999, Deputy Chief Schapp met with the Board of Safety and Mayor Gryniuk in executive session. He once again informed them of the hostile work environment at the Torrington Fire Department, and specifically the actions of Chief Johnson. (Id. ¶ 17)

25. On June 14, 1999, Deputy Chief Schapp was informed that the Board and the Mayor did not intend to take any steps to prevent further harassment or to address the hostile work environment. (Id. ¶ 18)

26. On June 17, 1999, Personnel Director Gritt instituted disciplinary proceedings against Deputy Chief Schapp because of his complaints about sexual harassment and misconduct in the Department. (Id. ¶¶ 22, 23)

27. On June 22, 1999, Deputy Chief Schapp received a one week suspension and a final written warning threatening him with termination for complaining about the sexually hostile work environment in the Fire Department. (Id. ¶¶ 24, 25)

THE PLAINTIFF

BY /s/ John R. Williams
JOHN R. WILLIAMS (ct00215)
51 Elm Street, Suite 409
New Haven, CT 06510
(203) 562-9931
Fax: (203) 776-9494
E-Mail: jrw@johnrwilliams.com
His Attorney

CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Attorney Martha A. Shaw at Howd & Ludorf, 65 Wethersfield Avenue, Hartford, CT 06114; Edward Maum Sheehy, Esq., at Williams, Cooney & Sheehy, LLP, 799 Silver Lane, Trumbull, CT 04212; and Albert G. Vasko, Esq., 140 Main Street, Torrington, CT 06790.

JOHN R. WILLIAMS