FILED

Nov 12  3 05 PM '03

UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT
NEW HAVEN, CONN.

DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAWRENCE HEPBURN | :  NO.: 3:02CV01252 (MRK) |
| v. | : |
| CITY OF TORRINGTON, MARQUAM JOHNSON, THE BOARD OF PUBLIC SAFETY OF THE CITY OF TORRINGTON, MARY JANE GRYNIUK AND THOMAS GRITT | : <br> : <br> : <br> :  NOVEMBER 10, 2003 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S, MARQUAM JOHNSON, MOTION FOR SUMMARY JUDGMENT**

**I.     REMAINING CLAIMS AGAINST JOHNSON:**

The plaintiff concedes there is no individual liability under either Title VII or the Connecticut Fair Employment Practices Act and, as such, a claim against Johnson is not cognizable. See Plaintiff's Memorandum, p. 5[1]. In addition, the plaintiff admits that he has not pled a separate cause of action for conspiracy. See Id. at 7. The plaintiff also admits that Johnson did not retaliate against him and, as such, the plaintiff must withdraw his First Amendment claim against Johnson. See Plaintiff's Local Rule 56(a)(2) Statement, ¶ 41.

---

[1] The plaintiff's brief does not contain numbered pages. References to page numbers are numbers that the defendant presumes would be correct had the plaintiff provided them.

The plaintiff has set forth no argument in opposition to the defendant's motion for summary judgment as to the claims under the Connecticut Constitution or the claim of assault.

The only remaining claims against defendant Johnson are: (i) a §1983 equal protection claim; (ii) a substantive due process claim; and (iii) intentional infliction of emotional distress. Each will be addressed in turn.

## II.    THE PLAINTIFF'S §1983 EQUAL PROTECTION CLAIM MUST FAIL.

To prevail on a § 1983 claim, a plaintiff must prove that the challenged conduct was attributable at least in part to a person acting under color of state law, and that the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. See Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993).

The Second Circuit has yet to clearly articulate the elements of a hostile work environment claim maintained under § 1983. Applying the Title VII hostile work environment standard to the equal protection clause, it has been held that a plaintiff makes out an equal protection hostile work environment claim by showing: (1) intentional harassment, (2) based on sex, (3) under color of state law, that is (4) sufficiently extensive to render the work environment hostile to the plaintiff." See Lange v. Town of Monroe, No. 00 Civ. 5760 (S.D.N.Y. Aug. 2, 2002), citing, Cohen v.

2

Litt, 906 F.Supp. 957 (S.D.N.Y. Dec. 12, 1995) (attached as Exhibit L to Defendant's prior memorandum). "Workplace harassment claims brought under section 1983 parallel those brought under Title VII, and therefore, courts have applied the same requirements of severity and pervasiveness." Lyon v. Jones, No. 3:01-CV-521 (D. Conn. April 23, 2003) (attached as **Exhibit A**).

This is not a matter of sex-based discrimination; Johnson's allegedly offensive behavior was directed indiscriminately to men and women; it was not gender based. The defendant's conduct did not deprive the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States: there is absolutely no evidence that the defendant's alleged conduct was motivated by the plaintiff's gender. Nor was the defendant's conduct sufficiently severe and pervasive to render the work environment hostile to the plaintiff.

### 1. The Plaintiff Failed to Show That Johnson's Conduct Was Based On The Plaintiff's Sex Because The Facts Establish That Johnson Was An "Equal Opportunity Harasser."

"[B]ecause Title VII is premised on eliminating *discrimination,* inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit." Holman v. State of Indiana, 211 F.3d 399, 403 (7th Cir. 2000), *cert. denied*, 531 U.S. 880 (2000). "Title VII does not cover the 'equal opportunity' ... harasser ... because such a person is not discriminating on the basis of sex." Id. "Whatever evidentiary route the plaintiff chooses to follow, he or she must always

3

prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion]...because of...sex." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 1002 (1998).

The key issue "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris v. Forklift Systems, Inc., 510 U.S. 17, 25, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring). Whether the evidence suggesting that the allegedly harassing behavior was also directed toward [fe]male employees is sufficient to establish an "equal opportunity" harasser defense. See Kopp v. Samaritan Health System, Inc., 13 F.3d 264, 269 (8th Cir. 1993) (requiring a Title VII plaintiff to prove that one sex was treated worse than the other); Holman, 211 F.3d at 403.

The plaintiff has failed to show that the harassing conduct occurred because of his sex. Alfano v. Costello, 294 F.3d 365 (2d Cir. 2002). (It is "axiomatic" that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex. Id. at 374, *citing* Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)); cf. Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 440 (2d Cir. 1999) (same as to racial discrimination). A plaintiff pursuing a sex-based hostile work environment claim "must always prove that the conduct at issue was not merely tinged with offensive connotations, but actually

4

constituted discrimination because of sex." Oncale, 523 U.S. at 80-81 (internal citation, ellipses, and alternation omitted).

Notwithstanding Hepburn's arguments to the contrary, there is no genuine issue of material fact that Johnson exhibited the same conduct to which Hepburn complains of to both male and female employees. See Plaintiff's Local Rule 56(a)(2) Statement ¶ 33. In apparent acquiescence to the fact that the record establishes Johnson is an equal opportunity harasser, Hepburn admits that Johnson repeatedly fondled the buttocks of his secretary, Gayle Carpenter, and behaved in an inappropriate sexual manner with her. See Plaintiff's Local Rule 56(a)(2) Statement ¶ 19. The United States Supreme Court recently explained:

> The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment. 'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview.' [Citations omitted.] We have always regarded the requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the work place – such as male-on-male horseplay or intersexual flirtation – for discriminatory 'conditions of employment.'

Oncale, 523 U.S. at 81, 118 S.Ct. at 1002-03 (1998).

The uncontroverted facts demonstrate that Johnson's actions were not motivated by gender and were consistent with Johnson's conduct towards female employees. Consequently, Johnson is entitled to summary judgment in his favor as a

5

matter of law because Hepburn failed to establish that Johnson exhibited conduct towards him that he did not exhibit towards female employees' Holman, 211 F.3d at 403.

### 2. The Plaintiff Has Failed To Establish That Johnson's Alleged Conduct Towards Him Was More Severe Or Pervasive Than Similar Conduct He Exhibited Towards Female Employees.

Even when viewed in the light most favorable to Hepburn, the conduct of which Hepburn alleges simply does not meet the stringent standards or clear high threshold that the courts have imposed for finding that conduct is so severe and pervasive as to permeate the workplace and affect his employment.

In order to ensure that Title VII does not become a code of general civility, the United States Supreme Court has specifically admonished courts to "filter out complaints attacking 'the ordinary tribulations of the workplace...'" Farragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2284 (1998). [Title VII] does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." Oncale, 533. U.S. at 81. Consequently, "conduct must be extreme to amount to a change in the terms and conditions of employment..." Farragher, 118 S.Ct. at 2284. Specifically, plaintiff must "show that the workplace is permeated with discriminatory intimidation, ridicule and insult." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993).

6

> We have emphasized, moreover, that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." In same-sex (as in all) harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field-even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and appropriate sensitivity to the social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

Oncale, 523 U.S. at 81.

When considering a hostile work environment claim, courts must consider, i.e., the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Elevator Sys., 510 U.S. 17, 30 (1993). These factors are to be measured by the totality of the circumstances. See Williams v. County of Westchester, 171 F.3d 98, 100 (2d Cir. 1999), and must be evaluated from both a subjective and objective viewpoint. See Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998). To prevail on a hostile work environment claim, a plaintiff must demonstrate "more than a few isolated

incidents." Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986). "Casual comments or accidental or sporadic conversation will not trigger equitable relief." Id. There is no fixed number of incidents that a plaintiff need endure to establish a hostile work environment claim. Alfano v. Costello, 294 F.3d 365, 379 (2d Cir. 2001).[2]

The plaintiff offers the following eight incidents in support of his hostile work environment claim: (1) on or about July 15, 1998, a training video was replaced with an x-rated movie, which the plaintiff unknowingly played before the class; (2) in mid summer 1999, the plaintiff heard Chief Johnson make a statement that the plaintiff was close to Mayor Gryniuk, and that the plaintiff was "licking her snatch;" (3) on August 25, 1999, during a discussion about the Emergency Operations Center on the issue of planning and logistics of a large scale emergency and the use of portable toilets, Chief Johnson made a hand gesture to simulate a male urinating; (4) on September 13, 1999, the plaintiff saw the words "BITCH" written on a chalkboard in the workout room; (5) on five or six occasions, Johnson came up behind male employees, placed his hands in their front pockets, and "goosed the inside part of [the employee's] hip bone;" (6) Johnson spoke of punishing a male employee by telling him to "pull out his pee pee so that he could whack it;" (7) at the Memorial Day Parade, Johnson was allegedly

---

[2] The Court of Appeals for the Second Circuit has held that one incident may be sufficient to establish a claim, if that incident significantly alters the conditions of the victim's employment. See Tomkca v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995) (one incident of sexual assault sufficient to give rise to a claim of hostile work environment).

8

seen blowing into the ear of Private Garrison; (8) in response to the efforts of Deputy Chief Schapp to address these issues, Deputy Schapp was allegedly suspended. *See* Plaintiff's Complaint, ¶¶ 14, 15, 17, 18, 19, 22, 23, 24, 25; Exhibit A, pp. 165-70, 200, 209-11, 245, 253-254; and Exhibit B, p. 3, attached to Defendant's prior memorandum.

Of these eight instances, the plaintiff has admitted he has first hand knowledge of only two instances of allegedly inappropriate conduct: the mid summer 1999 "licking her snatch" comment and the August 25, 1999 simulation of male urination incident. These two instances are insufficient to create a hostile work environment; the conduct only occurred twice, it was not severe, it was not physically threatening, and it did not interfere with the plaintiff's work performance. Furthermore, the plaintiff cannot support a claim that the other seven incidents were motivated by discriminatory animus. *See* Alfano, 294 F.3d at 377 (isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness). "As a general matter, `isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive.'" Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (quoting Tomka, 66 F.3d at 1305 n. 5.) *See also* Carrero v. New York City Hous. Auth., 890 F.2d 569, 577 (2d Cir. 1989).

9

### III. THE PLAINTIFF HAS FAILED TO STATE A SUBSTANTIVE DUE PROCESS CLAIM UPON WHICH RELIEF CAN BE GRANTED.

As set forth by the U.S. Supreme Court earlier this year,

> The Court has held that the Due Process Clause also protects certain "fundamental liberty interest[s]"... Only fundamental rights and liberties which are "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty" qualify for such protection... Many times, however, we have expressed our reluctance to expand the doctrine of substantive due process;... in large part "because guideposts for responsible decision making in this unchartered area are scarce and open-ended."

Chavez v. Martinez, __ U.S. __, (May 27, 2003)(No. 01-1444, October Term 2002) (internal citations and ellipses omitted).

The plaintiff has cited no authority to support his contention that the facts in this case articulate a substantive due process claim. Of note, is that the cases the plaintiff cites on pages 20-21 of his brief are clearly distinguishable from the case at hand. Ramos v. Gallo, 596 F. Supp 833 (D. Mass. 1984) (police officer shot plaintiff in stomach after plaintiff stopped running; right to be free of state intrusion into realm of bodily security through brutal means); Hall v. Tomey, 621 F.2d 607 (4th Cir. 1980) (student paddled by teacher and subsequently admitted to hospital for ten days; right to be free of state intrusion into realm of bodily security through brutal means); Rochin v. California, 342 U.S. 165 (1952) (overturning conviction based on evidence obtained by involuntary stomach pumping; right to be free of state intrusion into realm of bodily security through brutal means); Palko v. Connecticut, 302 U.S. 310 (1937) (conviction

10

of defendant on re-trial resulted in defendant being sentenced to death; right to life without due process of law). The one Second Circuit case the plaintiff relies upon, Smith v. Half Hollow Hills Cent. School, 298 F.3d 168 (2d Cir. 2002), actually affirmed the district court's dismissal of seventh grade student's substantive due process claim against teacher, holding the teacher's actions in slapping a student without any pedagogical or disciplinary justification did not shock the conscience and did not violate student's substantive due process rights.

The facts in the instant matter do not rise to the level of extreme and outrageous behavior of the above-cited cases. The plaintiff's allegations against Johnson clearly do not amount to a violation of the Constitutional right of bodily integrity. Accordingly, the plaintiff's claims should be dismissed.

## IV.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

As stated in the defendant's prior memorandum of law, the doctrine of exhaustion applies to common law causes of action. See e.g., Lathrop v. Town of East Hampton, 2001 Ct. Sup. 6904, at *6922-23, No. CV97-0083839 (May 23, 2001) (Parker, J.); Cross v. Nearine, 1995 Ct. Sup. 1639, at *1647-48, No. CV94 0538675 S (Feb. 17, 1995) (Wagner, J.); and Cassotto v. Winchester Board of Education, 1994 Ct. Sup. 11479, at *11484, No. CV93 0062801 (Nov. 15, 1994) (Pickett, J.). In this case, the plaintiff never grieved the alleged conduct that forms the basis for his

11

common law intentional infliction of emotional distress claim - specifically, he never grieved Johnson's alleged discriminatory actions. A charge of discrimination, or intentional infliction of emotional distress stemming from discrimination, falls within the scope of the Collective Bargaining Agreement and was subject to the available grievance procedure. See Collective Bargaining Agreement, §17.2, attached as Exhibit D to defendant's prior memorandum. The plaintiff's pursuit of his discrimination claims through the EEOC does not obviate the need to exhaust the grievance procedures before bring a common law tort claim.

## V.   CONCLUSION

For the reasons above, and in the defendant's prior memorandum of law, the defendant, Marquam Johnson, respectfully requests that the Court grant his motion for summary judgment.

                                              DEFENDANT,
                                              MARQUAM JOHNSON

By */s/ Martha Shaw*
Martha A. Shaw [ct12855]
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114
Phone: (860) 249-1361
Fax: (860) 249-7665
E-Mail: mshaw@hl-law.com

## **CERTIFICATION**

   This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 10th day of November, 2003.

John R. Williams, Esquire
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Edward Maum Sheehy, Esquire
Williams, Cooney & Sheehy, LLP
799 Silver Lane
Trumbull, CT 04212

Albert G. Vasko, Esquire
140 Main Street
Torrington, CT 06790

*Martha A. Shaw*
Martha A. Shaw

LYON> <v>. <JONES, (Conn. 2003)

GERALDINE LYON, Plaintiff, v. VIRGINIA JONES, EDWARD, REYNOLDS and OFFICE

OF THE ATTORNEY GENERAL Defendants.

CIVIL ACTION NO. 3:01-CV-521 (JCH)

United States District Court, D. Connecticut

April 23, 2003

RULING ON DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT [DKT. NO. 35]

JANET C. HALL, United States District Judge

Plaintiff, Geraldine Lyon ("Lyon"), brings claims against the defendants, Virginia Jones ("Jones"), Edward Reynolds ("Reynolds") and the Office of the Attorney General ("Attorney General") (collectively "defendants"), pursuant to section 1983, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Lyon alleges that the Office of the Attorney General subjected her to a hostile work environment and failed to promote her on the basis of sex in violation of Title VII, and that Jones and Reynolds maliciously and arbitrarily discriminated against her, thereby denying her equal protection of the law.[fn1] Lyon seeks compensatory and punitive damages, attorneys fees and costs, a temporary and permanent injunction, and other fair and equitable relief.

The defendants move for summary judgment on all claims asserted. Specifically, the defendants argue that Lyon's failure to promote claims are time barred or, in the alternative, that she has not established a prima facie case with respect to those claims, that Lyon was not subjected to a hostile work environment, and that Lyon was not treated differently from other similarly situated persons. For the reasons stated below, the court grants defendants' motion.

I. FACTUAL BACKGROUND

At all times relevant to this action, Lyon was employed by the Office of the Attorney General for the State of Connecticut. Defendant Virginia Jones served as the Chief Administrative Officer for the Office of the Attorney General. Defendant Edward Reynolds was an Assistant Attorney General and department head of the Office of the Attorney General.

Lyon was hired in 1986 for a secretarial position in the Collections Department of the Office of the Attorney General. The following year, she was promoted to the position of Paralegal Specialist I. Beginning in 1991, Lyon inquired of Jones about a promotion to Paralegal Specialist II, believing that the quality and substance of her work warranted such an advancement. At Jones' request, Lyon filled out a three-page job duties questionnaire to facilitate the reclassification of her position to Paralegal Specialist II. In November of 1991, Jones submitted Lyon's materials, including her job duties questionnaire, to the Department of Administrative Services. After reviewing the job duties questionnaire and performing a desk audit of Lyon's job requirements, Administrative Services determined that Lyon's duties were consistent with the position

of Senior Clerk, not Paralegal Specialist I. As a result, it denied her request for a reclassification to Paralegal Specialist II. In March of 1998, Lyon again requested reclassification to Paralegal Specialist II. In support of her application for promotion, Lyon prepared a formal written package detailing her qualifications and submitted it to Jones. At a meeting between Lyon, her union steward, Jones, and Reynolds on March 24, 1998, Jones informed Lyon that, in order to process her reclassification request, Administrative Services required an updated job duties questionnaire. Lyon felt that the 1991 job duties questionnaire was up to date and that her application package contained all information relevant to her request. Therefore, she did not submit an updated job duties questionnaire. By memo dated June 12, 1998, Administrative Services informed Lyon that it had insufficient information upon which to evaluate Lyon's reclassification request. Lyon did not receive the promotion she requested.

Since she made the formal request for promotion, Lyon claims she has been harassed and retaliated against by co-workers and supervisors. Specifically, Lyon claims that she was asked to remove a sign from outside her cubicle, wrongfully accused of harassing a male co-worker, unfairly given an unsatisfactory performance rating, and required to perform unreasonable job duties.

In support of her hostile work environment claim, Lyon points to an incident in October, 1998 in which she hung a sign outside her cubicle which read, "Give a man an inch . . . and he thinks he's a Ruler." Reynolds informed Lyon that he had received complaints about the sign and asked Lyon to move it to the inside of her cubicle. She complied with the request.

On April 20, 1999, Lyon received a written reprimand for allegedly invading the personal space of her co-worker, Assistant Attorney General Glenn Woods. Lyon claims that she did nothing to deserve the reprimand, which accused Lyon of coming within an inch of Woods in the hallway, after having been warned by Reynolds to give Woods a "wide berth."

Because of her dispute with Woods and other alleged misbehavior, Lyon's performance evaluation for the period from September 1, 1998 to August 31, 1999 indicated that Lyon was rated "unsatisfactory" in the category "ability to deal with people." The rating in this category caused Lyon to receive an overall service rating of "less than good." If an employee receives two such ratings in a two-year period, that employee may be discharged from State service. After receiving this performance rating, Lyon filed a grievance to have it vacated because it was untimely filed. The State agreed, noting that the service rating was filed 25 days past the deadline specified in Lyon's collective bargaining agreement, and removed it from her personnel file. Lyon has never received another unsatisfactory service rating.

Lyon also alleges that she was harassed because she was required to re-key information when the Office of the Attorney General began using a new database. A few months after the new database was implemented, Reynolds expressed concern over Lyon's failure to enter collection payment information into the database. He required Lyon to enter all the payment information prior to the end of the fiscal year, which was June 30, 1999. Lyon felt that, during this incident, Reynolds treated her "like an idiot," but she admitted at her deposition that the substance of Reynolds' request was not unfair.

Lyon claims that these actions constituted unlawful sex discrimination and were inspired by malice on the part of Jones and Reynolds. She claims to have suffered emotional distress and loss of employment opportunity as a result.

II. DISCUSSION

A. Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002). The burden of showing that no genuine factual dispute exists rests upon the moving party. Marvel Characters Inc., 310 F.3d at 286. Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present such evidence that would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Lucente v. International Business Machines Corp, 310 F.3d 243, 253 (2d Cir. 2002). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the moving party." Lucente, 310 F.3d at 254. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). The substantive law of the claim governs materiality, as "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

B. Lyon's Title VII Claims

1. Failure to Promote

Lyon claims that the Office of the Attorney General failed to promote her because of her sex in violation of Title VII of the Civil Rights Act of 1964. She identifies two occasions on which she requested, and was denied, a promotion: November of 1991 and June of 1998. Even if Lyon could establish at trial that the Office of the Attorney General declined to promote her based on her sex, her claim under Title VII is time barred.

A Title VII claim based on a "discrete act" must be filed with the EEOC "within the 300-day time period after the discrete discriminatory act occurred." National R.R. Passenger Corp. v. Morgan, 122 S.Ct. 2061, 2072-73 (2002). Although Lyon argues that the Office of the Attorney General's failure to promote her constituted a continuing violation which repeated itself each day she remained in her current position, the Supreme Court has specifically identified a "failure to promote" as a "discrete act." Id. at 2073.

Therefore, Lyon cannot bring a claim based on a failure to promote that took place more than 300 days prior to April 18, 2000, the date in which she filed her charge with the EEOC. The 300th day preceding Lyon's

complaint with the EEOC is June 23, 1999. Both of her requests for promotion were denied prior to that date. Therefore, her disparate treatment claims based on failure to promote are time barred.

2. Hostile Work Environment

Lyon's hostile work environment claim is not time-barred, however. "A hostile work environment claim is comprised of a series of separate acts that collectively constitute one `unlawful employment practice.'" Id. at 2074. As a result, as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. Therefore, the court will consider the merits of Lyon's hostile work environment claim.

To establish a Title VII claim based on hostile work environment, Lyon must show that she was subjected to harassment "sufficiently severe or pervasive to alter the conditions of [her] employment and create a hostile working environment," Harris v. Forklift Systems, 510 U.S. 17, 21 (1993), and that the harassing conduct occurred because of her sex, Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002).

In order for the harassment of Lyon to be actionable, the harassing conduct must have been "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Id. at 373. The workplace must have been both objectively and subjectively hostile.

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

Harris, 510 U.S. at 21-22. In determining whether a workplace is hostile or abusive, the finder of fact must look to the totality of the circumstances of the workplace and the alleged harassment, circumstances which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. "As a general rule, incidents must be more than `episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Alfano, 294 F.3d at 374 (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)).

Lyon has not presented evidence that creates a material issue of fact that the harassment of her was sufficiently severe or pervasive to create an objectively hostile work environment. Lyon has identified only four isolated incidents that she claims were harassing over a period of several years: Reynolds' request that she remove the sign from her cubicle, Reynolds' written reprimand of her for allegedly invading Attorney Glenn Woods' personal space in April of 1999, Reynolds' treatment of her when requesting that she complete the entry of payment information in April of 1999, and the poor performance rating she received in October of 1999.

These incidents of alleged harassment do not, even if based on sex, constitute a violation of Title VII. Viewed objectively, the series of isolated incidents Lyon describes did not create a work environment

"severely permeated with discriminatory intimidation, ridicule, and insult." Id. at 373. Title VII is not a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Lyon's complaints, even if proven, "attack[] the ordinary tribulations of the workplace." Id. It is precisely this type of complaint that Title VII's "severe or pervasive" requirement is designed to "filter out." Id.

Furthermore, Lyon has not created a material issue of fact that any of the above actions, even if harassing, were motivated by a discriminatory intent. There is no evidence in the record to support Lyon's claim that she was discriminated against on the basis of sex. Lyon has not presented any proof demonstrating either that male employees were treated more favorably than she or that Jones, Reynolds, or any other individual responsible for the harassment expressed or otherwise demonstrated discriminatory animus. Therefore, defendants' motion for summary judgment is granted with respect to Lyon's hostile work environment claim.

C. Section 1983 Claims

1. Failure to Promote

Lyon also claims that Jones and Reynolds irrationally and arbitrarily failed to promote her out of spite, in violation of the equal protection clause. Lyon's claim, to the extent it is based on the failure of Jones and Reynolds to promote her in 1991, is time barred. "In section 1983 actions, the applicable limitations period is found in the general or residual state statute of limitations for personal injury actions." Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (internal quotation and citation omitted). "When a [section] 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations." Walker v. Jastremski, 159 F.3d 117, 119 (2d Cir. 1998). Lyon filed her complaint in this action on April 2, 2001. Therefore, her claim based on the 1991 failure to promote is barred.

Her claim with respect to the failure to promote in 1998 is not time barred, however. The Department of Administrative Services determined that she would not be promoted and sent her a letter to that effect, on June 12, 1998. Lyon filed this action within three years of that date.

Lyon's 1998 claim for failure to promote cannot withstand summary judgment on the merits, however. In order to establish a cause of action under the equal protection clause based on a "class of one," a plaintiff must demonstrate that she is the victim of "intentional and arbitrary discrimination," i.e., "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000).

Lyon has not created a material issue of fact that she was treated differently than others similarly situated. Lyon has not demonstrated that other similarly situated persons received promotions while she did not. Simply listing other individuals, in the absence of any evidence regarding their work performance or duties, who were promoted from Paralegal Specialist I to Paralegal Specialist II, is insufficient. See Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997) (a plaintiff must demonstrate that "similarly situated" persons are similarly situated in all material respects).

2. Hostile Work Environment

Lyon also claims that Jones and Reynolds harassed her, thereby creating a hostile work environment, arbitrarily, irrationally, and based on malice. The alleged harassment Lyon experienced at work, however, is

insufficiently severe pervasive, as a matter of law to rise to the level of a constitutional violation. A claim for harassment which creates a hostile work environment is cognizable under section 1983. Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143-44 (2d Cir. 1993). However, not all harassment is actionable, and only "harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort." Annis v. County of Westchester, N.Y., 36 F.3d 251, 254 (2d Cir. 1994).

Workplace harassment claims brought under section 1983 parallel those brought under Title VII, and therefore, courts have applied the same requirements of severity and pervasiveness. See, e.g., McPhaul v. Board of Com'rs of Madison County, 226 F.3d 558, 566 n. 6 (7th Cir. 2000) ("Because section 1983 claims generally follow the contours of Title VII claims, we will apply the same hostile environment standard that is applied in Title VII cases."); Rafiy v. Nassau County Medical Center, 218 F. Supp.2d 295, 305 (E.D.N.Y. 2002) (requiring harassment to be severe and pervasive to be cognizable under the equal protection clause); Lange v. Town of Monroe, 213 F. Supp.2d 411, 423 (S.D.N.Y. 2002) (same); Ericson v. City of Meriden, 113 F. Supp.2d 276, 290 (D.Conn. 2000) (same). As discussed supra, Lyon has not created a material issue of fact that either Jones' or Reynolds' harassment of her was severe or pervasive enough to create a hostile work environment. Therefore, Jones and Reynolds are entitled to summary judgment on Lyon's section 1983 claim.

III. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment [Dkt. No. 35] is GRANTED. The clerk is ordered to close this case.

SO ORDERED.

[fn1] Lyon, in her opposition to summary judgment, also claims that she was also discriminated against on the basis of her age and disability. Although Lyon's two previous complaints in this case, both of which were dismissed by the court, contained causes of action under the Americans with Disabilities Act, 42 U.S.C. § 12111, et seq., and the Age Discrimination in Employment Act, 42 U.S.C. § 621, et seq., her second amended complaint states a cause of action under Title VII only. Claims of disability and age discrimination are not cognizable under Title VII. Therefore, Lyon's only viable claim under the statute is for sex discrimination.

Copyright © 2003 Loislaw.com, Inc. All Rights Reserved