UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE HEPBURN | : | |
| | : | |
| VS. | : | NO. 3:02CV1252 (MRK) |
| | : | |
| CITY OF TORRINGTON, | : | |
| MARQUAM JOHNSON, | : | |
| BOARD OF PUBLIC SAFETY OF THE | : | |
| CITY OF TORRINGTON, | : | |
| MARY JANE GRYNIUK and | : | FEBRUARY 10, 2004 |
| THOMAS GRITT | : | |

**SUPPLEMENTAL MEMORANDUM OF LAW OF THE PLAINTIFF LAWRENCE
HEPBURN IN OPPOSITION TO BOTH MOTIONS FOR SUMMARY JUDGMENT**

Pursuant to the request of the Court at oral argument on the defendants' Motion for

Summary Judgment on January 23, 2004 the undersigned provides the following additional

information.  Adverse employment action was taken against the plaintiff.  He received a

series of warnings, was subject to one disciplinary proceeding and a letter was placed in

the his file.  The letter remains in the file although it is for informational purposes only and

cannot be used as a disciplinary action.[1]

---

[1] During oral argument the defendant represented to the Court that the letter was
taken out of the plaintiff's file.  The plaintiff informed me during a phone conversation on
February 10, 2004 that the letter remains in the file for informational purposes.

Several events in this case occurred subsequent to September 22, 2000.  The plaintiff's responses to defendant's first set of interrogatories and requests for production answer to question number twenty one states:

> "It was not the defendant that jeopardized or retaliated against my position but the present chief, John Field, who was acting chief during the suspension of the defendant, and the present deputy chief Jaye Giampaolo.  On or about 8/1/01, I attended a conference in Denver, CO.  Prior to that, I filed my CHRO complaint with the city about what was happening to me.  When I returned from the conference, my office was moved to the next room down (a much smaller office) than my present one.  I filed a grievance but my union officials did not follow through with the grievance and never told me why.  I also have been excluded from department officers meetings, even though other officers ask why I am not there, and have been denied to attend a medical training course.  The acting chief, John Field, made a statement to me with my union president, Frank Hudak present, that if I 'weren't friends with Tim Schapp[2], [my] position would not be an issue'.  I still continue to be 'left in the dark' on many issues concerning training."  Additionally, the plaintiff's responses to defendant's first set of interrogatories and requests for production answer to question number twenty three states: "On or about 1/26/01, I realized that a tape record was missing from my office.  I talked with the Fire Marshals, Chief and Deputy Chief.  No one had seen it.  One day I was talking with FF Edwin Pollock and he told me that he had seen the tape recorder in the Deputy Chief's office desk draw.  I went to see Deputy Chief Giampaolo and he said it had been there all along.  I sent a memo out stating that the tape recorder was found and that it was in the Deputy Chief's office and if anyone needed it, that's where it was.  The next day I was called into the office and given a written reprimand about my attitude and a communication problem.  Acting Chief Field was very upset with me, pounding his fist on the table, witnessed by Kevin Engle, Union Vice President.  Acting Chief Field stated that he had several complaints from both inside and outside of the Department about my attitude.  I asked him for the names and he would not give them to me.  I filed a grievance and went to the State Labor Board.  Chief Field

---

[2] Timothy Schapp is the Deputy Chief of the Torrington Fire Department.  He has been with the Department nearly fifteen years.  He claims that for an extended period of time, he had to work in a hostile work environment, due primarily to the action of Chief Marquam Johnson.  On numerious occasions Timothy Schapp reported that the Chief had engaged in inappropriate sexual behavior in the workplace.  See., Plaintiff's evidence in opposition to both motions for summary judgment.

could only produce one name from outside of the Department, a Ms. Sandy Brophy. I found this very strange.  I am still waiting for the names from inside our Department."

Subsequent to September 22, 2000, the plaintiff was retaliated against and punished for his close relationship with Tim Schapp. Tim Schapp was disliked because he reported that the Chief had engaged in inappropriate sexual behavior in the workplace. The several events listed establish that subsequent to September 22, 2000 the plaintiff was retailed against and punished because of issues arising out of a sexually hostile work environment in the department.

The instant case is factual distinguishable from *Alfano v. Costello*, 294 F. 3d 365 (2d Cir. 2002).  In *Alfano* the Second Circuit Court of Appeals stated:

"There is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment; rather, we view the circumstances in their totality, examining the nature, severity, and frequency of the conduct. . . .  Taking these cases together as a rough template, we think the conduct in this case falls far short of an actionable claim.  In all, the incidents were infrequent and episodic; half or more of them lacked any sexual overtone; and those that did have sexual overtone were difficult for an employer to remedy because they were largely anonymous.  Moreover, as we noted previously, seven of the twelve incidents must be excluded from consideration altogether because they either support no inference of mistreatment at all or support no inference of sex-based hostility.  As for the remaining five, the three carrot incidents, which are close in time and amount to three iterations of the same prank, can be considered as a single episode.  A reasonable person could have found the carrot and cartoon incidents humiliating, and they were plainly offensive.  But they were too few, too separate in time, and too mild, under the standard so far delineated by the case law, to create an abusive working environment."  *Alfano v. Costello*, 294 F. 3d 365, 379, 380 (2d Cir. 2002).

The plaintiff's statement of material facts and deposition testimony list facts more numerous, closer in time and more severe than those in *Alfano*. The plaintiff's statement of material facts and deposition testimony list the following incidents of misconduct:

1. On 3/31/99 at approx. 12:00 p.m. Gayle Carpenter, defendant Johnson's secretary, was having a conversation with Deputy Chief Schapp. She was telling the Deputy Chief that her allergies were bad and she had to take steroids. Chief Johnson came out of his office and said "Won't it give you larger breasts? She was humiliated, embarrassed and upset. (Carpenter Interrogatory Responses, ¶ 18)

2. In April 1999 while looking at some paperwork Chief Johnson said to Ms. Carpenter: "Can' t you finger it out ?" (Ibid.)

3. Chief Johnson referred to Ms. Carpenter as "Babe" on numerous occasions. (Ibid.)

4. Chief Johnson said to Ms. Carpenter:  "if you  weren't my secretary I'd kiss you." (Ibid.)

5. Chief Johnson made a remark about Ms. Carpenter's lipstick.  (Ibid.)

6. Chief Johnson always referred to "whacking pee-pees" with regard to disciplining the fire fighters.  (Ibid.)

7. On or about November 3, 1998 Ms. Carpenter was struck in buttocks with photograph album. She was extremely upset. She spoke to D/Chief Schapp about the incident.  She told Training Officer Hepburn about Johnson's actions.  (Ibid.)

8. On or 9/13/99, "BITCH" was written on chalkboard. T/O Hepburn conveyed to defendant Johnson Ms. Carpenter's feeling that this was sexually degrading.  (Ibid.)

9. On or about 9/14/99 "BITCH = FEMALE DOG" appeared on chalkboard in the  Workout Room.  (Ibid.)

10. When Ms. Carpenter informed Chief Johnson of a medical appointment he responded: "is it terminal ?"  (Ibid.)

11. Chief Johnson was allowed to enter the Fire Department Building during his suspension a number of times, making the suspension appear to be a joke. (Ibid.)

12. Chief Johnson would continually tell Ms. Carpenter that the Fire Department is "a man's world".  (Ibid.)

13. Offensive language of a sexual nature was written in the mezzanine area at the Fire Department and it remained there for an extended time.  (Ibid.)

14. Chief Johnson asked Ms. Carpenter in front of others if she was having a "hot flash".  (Ibid.)

15.  Chief Johnson struck Ms. Carpenter on the buttocks while she was faxing a letter in dispatching.  (Ibid.)

16.  Timothy Schapp was the Deputy Chief of the Torrington Fire Department. (Schapp CHRO Affidavit, ¶ 1)

17.  On or about January, 1999, Deputy Chief Schapp reported to Mayor Gryniuk.  that the Chief had engaged in inappropriate sexual behavior in the workplace which was very offensive and disturbing and were creating an intolerable and threatening work atmosphere.  (Id. ¶ 3)

18.  Deputy Chief Schapp also spoke with Board of Safety Commissioners Telman and Potter, expressing his concerns about the Chief's behavior to them.   (Id. ¶ 5)

20.  On another occasion, Chief Johnson grabbed an employee by the testicles. (Id. ¶ 10)

21.  Private Michael Solani reported to Deputy Chief Schapp that Chief Johnson pulled down his sweatpants in front of  Mike's two young sons on an occasion when Mr. Solani brought his sons into Headquarters for a visit.  Mr. Solani expressed his disapproval of that incident to the Chief.  (Id. ¶ 13)

22.  Mary Robinson reported to Deputy Chief Schapp that the Chief had undressed in his office on more than one occasion, each time without closing the door. (Ibid.)

23.  Lieutenant Charles Warner reported to Deputy Chief Schapp that he was working as the dispatcher one evening, in the presence of Chief Johnson and several Volunteer Fire Chiefs.  On that  evening, Lt. Warner made an error in dispatching a vehicle, and Chief Johnson instructed him to "pull out his pee pee so that he [Chief Johnson] could whack it."  (Ibid.)

24.  On June 1, 1999, Lieutenant David Starr informed Deputy Chief Schapp that after the Memorial Day Parade when the Color Guard was in formation, Chief Johnson was seen blowing into the ear of Private Mark Garrison.  (Id. ¶ 14)

25.   On June 2, 1999, Deputy Chief Schapp again met with Mayor Gryniuk.  I expressed his inability to continue working under the hostile, threatening and inappropriately sexual work environment  created by the unchecked actions of Chief Johnson.  (Id. ¶ 16)

26.  On June 9, 1999, Deputy Chief Schapp met with the Board of Safety and Mayor Gryniuk in executive session.  He once again informed them of the hostile work environment at the Torrington  Fire Department, and specifically the actions of Chief Johnson.  (Id. ¶ 17)

27.  On June 14, 1999, Deputy Chief Schapp was informed that the Board and the Mayor did not intend to take any steps to prevent further harassment or to address the hostile work environment.    (Id. ¶ 18)

28.    On June 17, 1999, Personnel Director Gritt instituted disciplinary proceedings against Deputy Chief Schapp because of his complaints about sexual harassment and misconduct in the Department.  (Id. ¶¶ 22, 23)

29.    On June 22, 1999, Deputy Chief Schapp received a one week suspension and a final written warning threatening him with termination for complaining about the sexually hostile work environment in the Fire Department.  (Id. ¶¶ 24, 25)

30.    Plaintiff was moved to a smaller office.

31.    Plaintiff was excluded from officers' meetings.

32.    Plaintiff was denied a training request.

33.    Plaintiff was not issued protective clothing.

Taken together all the conduct in this case establishes an actionable claim as a matter of law.  The incidents were frequent and contained overt sexual acts or sexual overtones.  Moreover, all the incidents listed support an inference of sex-based hostility. They meet the standard so far delineated by the case law to create an abusive working environment.

Respectfully submitted:

_____
CHRISTY H. DOYLE
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
(203)562-9931
Fax: (203) 776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Attorney Martha A. Shaw at Howd & Ludorf, 65 Wethersfield Avenue, Hartford, CT 06114; Edward Maum Sheehy, Esq., at Williams, Cooney & Sheehy, LLP, 799 Silver Lane, Trumbull, CT 04212; and Albert G. Vasko, Esq., 140 Main Street, Torrington, CT 06790.


_____
CHRISTY H. DOYLE