UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAWRENCE HEPBURN | : |
| | : NO. 3:02CV1252(MRK) |
| | : |
| v. | : |
| | : |
| CITY OF TORRINGTON, MARQUAM | : |
| JOHNSON, THE BOARD OF PUBLIC | |
| SAFETY OF THE CITY OF | : |
| TORRINGTON, MARY JANE GRYNIUK | : |
| AND THOMAS GRITT | : |

### RULING

Plaintiff Hepburn, a firefighter with the Torrington Fire Department, brings this action alleging sexual harassment and the creation of a hostile work environment under Title VII, as well as several additional federal and state claims, relating to the actions of Defendant Johnson, the former chief of the Torrington Fire Department. Defendants have moved for summary judgment on all claims. For the reasons stated below, Defendants' Motions for Summary Judgment [docs. #27, 30] are GRANTED.

### I.

The facts underlying this case are not in serious dispute. During all relevant periods Hepburn was employed as a Training Officer with the Torrington Fire Department, where he has been employed since March 27, 1988. Local Rule 9(c)2 Statement [doc. #28], ¶1, 2. Defendant Johnson was the Chief of the Torrington Fire Department during this period. *Id.* ¶4. Plaintiff asserts that a series of incidents he experienced in the Department created a sexually abusive, hostile, and retaliatory work environment. Compl. [doc. #1] ¶14.

1

The first such incident occurred on or about July 15, 1998. Hepburn alleges that he was scheduled to lead a training session that involved a program with a videocassette. Hepburn Dep. [doc. #31] at 166. When he went to play the tape, he discovered that someone had substituted a pornographic video for the training tape. He disposed of the pornographic tape immediately. *Id.* at 167. Hepburn stated that he had no idea who had substituted the tape. He alleges that he immediately told Chief Johnson about the incident and that the Chief told him that it was a sort of fireman's joke and that the original training tape would show up eventually. *Id.* at 167.

The second incident occurred on or about August 25, 1999. Hepburn and Chief Johnson were having a conversation about emergency management items and began talking about the use of portable toilets. Chief Johnson used his hands to demonstrate how men urinate. *Id.* at 165-66. Hepburn found this behavior inappropriate. *Id.* at 166.

The third incident occurred on or around October 13, 1999. Hepburn went into the workout room at the firehouse and discovered the word "bitch" written on the blackboard. *Id.* at 165. Hepburn stated that he had no idea who wrote the word on the blackboard. *Id.* at 170. He did not erase the word but sent Chief Johnson a memo the next day describing what had happened. Chief Johnson responded with a memo asking Hepburn to immediately bring any further incidents to his attention and to erase any other such messages he might discover. *Id.* at 228. Hepburn stated that he did not believe Chief Johnson condoned the incident. *Id.*

Hepburn does not recall when the last asserted incident occurred. Hepburn was a passenger in a vehicle driven by Deputy Chief Tim Schapp when Schapp allegedly stopped the vehicle outside the fire station to talk with Chief Johnson. Chief Johnson allegedly used a crude sexual slur to describe Hepburn's relationship with Mayor Gryniuk and implied that Hepburn

could get anything he wanted from her. *Id.* at 168. Hepburn told Chief Johnson the next day that he had not appreciated the comment, and Johnson relied, "oh, okay," which Hepburn took as the Chief's apology. *Id.* at 169, 182. The foregoing events are the only four incidents Hepburn took as "unwelcome sexual advances." *Id.* at 169.[1]

Hepburn filed this complaint on July 19, 2002, alleging sexual harassment and the creation of a hostile work environment under Title VII, denial of the right to substantive due process and equal protection under the Fourteenth Amendment, retaliation in violation of the First Amendment and Title VII, and state law claims for violation of the Equal Protection clause of the Connecticut constitution, intentional infliction of emotional distress, assault and battery, and violation of the Connecticut Fair Employment Practices Act, against Defendants City of

---

[1] In his complaint, Hepburn also asserts other alleged acts by Chief Johnson that Hepburn believes contributed to a hostile work environment at the firehouse. Compl. [doc. #1] ¶22-24. However, at his deposition, Hepburn admitted that he had no personal knowledge of any of these events, but that they represented "stuff I've heard from other members within the department." Hepburn Dep. at 169. *See also id.* at 245-54 (describing other incidents which he heard about "all through the rumor mill"). Insofar as Hepburn has produced no evidence that any of these events occurred, the Court will not consider them in making its decision on summary judgment. *See* Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *Patterson v. County of Oneida*, 2004 U.S. App. LEXIS 14615 (2d Cir. July 15, 2004) ("Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.")

Hepburn has also submitted affidavits from Gayle Carpenter and Timothy Schapp, detailing similar allegations against Chief Johnson and the Torrington Fire Department – which were filed in Carpenter's lawsuit against Chief Johnson and the Department – as well as Schapp's CHRO filing. [doc. #33]. The Court has considered this evidence but finds it of little weight for Hepburn's case, because the Second Circuit has previously held that Carpenter's allegations were insufficient to sustain a hostile environment claim, *Carpenter v. City of Torrington*, 2004 U.S. App. LEXIS 11534, at *3 (2d Cir. 2004) and because Schapp recites without any first-hand evidence the same allegations that Hepburn asserts and that this Court has already declined to consider, as discussed above.

Torrington, Marquam Johnson, Chief of the Torrington Fire Department, Mary Jane Gryniuk, Mayor of Torrington, and Thomas Gritt, Director of Personnel of the City of Torrington. All individuals are sued in their individual capacities.[2] All Defendants have moved for summary judgment [docs. #27, 30].

## II.

### A. Standard for Summary Judgment

Summary judgment is appropriate when there is no dispute as to a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of demonstrating that there is no genuine material dispute of fact. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000). The Second Circuit has cautioned that "in determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Tomka v. Seiler*, 66 F.3d 1295, 1304 (2d Cir. 1995).

### B. Title VII - Hostile Work Environment

Plaintiff has asserted that he was subjected to a hostile work environment in violation of the prohibition on discrimination on the basis of sex in the workplace set forth in Title VII of the Civil Rights Act of 1964. 42 U.S.C. §2000e, *et seq.* The Supreme Court has held that a work

---

[2]At oral argument, Plaintiff's counsel represented that he no longer pursued his Fifth Amendment claim, as well as all claims against the Torrington Board of Public Safety and the Title VII and CFEPA claims against the individual defendants. Defendants are therefore entitled to summary judgment on the foregoing claims.

environment must be both subjectively and objectively hostile and abusive in order to establish a Title VII hostile environment claim. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). ("The conduct alleged must be severe and pervasive enough to create an environment that would reasonably be perceived, and is perceived, as hostile or abusive."). As the Second Circuit has instructed, "A plaintiff alleging a hostile work environment 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment.' To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse. Relevant factors include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) and *Harris*, 510 U.S. at 23).

    The Second Circuit has also recently cautioned district courts considering hostile environment claims on summary judgment. *See Feingold v. State of New York*, 2004 U.S. App. LEXIS 8543, *23-*24 (2d Cir. Apr. 30, 2004); *Terry v. Ashcroft*, 336 F.3d 128, 147-50 (2d Cir. 2003). The Second Circuit explained that "[w]hile the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that 'while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.' The environment need not be unendurable or intolerable. Nor must the victim's psychological well-being be damaged. In short, 'the fact that the law

requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases.'" *Id.* at 148 (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)).

Even with this lowered standard, however, this Court cannot conclude that Plaintiff has alleged facts that would permit a reasonable jury to find that his work environment was objectively hostile in accordance with governing law. First of all, there is no basis in the record for a finding that the acts Hepburn complains of were on account of his gender. *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998). Indeed, Hepburn presents evidence that Chief Johnson treated women just as badly — if not worse — than he treated Hepburn. Pl's Local Rule 56(a)2 Statement [doc. #34] ¶II.1-15 (detailing various comments Chief Johnson made to Gayle Carpenter, his secretary); s*ee also Carpenter v. City of Torrington*, 2004 U.S. App. LEXIS 11534, at *2-*3 (2d Cir. 2004) (finding that "the acts allegedly committed by Johnson were not on account of Carpenter's gender . . . because Johnson was equally, if not more, sexually offensive to male employees of the fire department"). Furthermore, the Court does not believe that a reasonable jury could find that the four incidents alleged by Hepburn are sufficiently severe or pervasive enough to rise to the level of a hostile work environment. The four incidents occurred over a two year period and at least one of the incidents (the word written on the blackboard in the workout room) was not directed at Hepburn. In the *Carpenter* case, the Second Circuit found that "the complained of incidents were not severe or pervasive because they primarily consisted of inappropriate comments that occurred only a handful of times over a four-year period." *Id.* at *3. The same conclusion applies here. Defendants are therefore entitled

to summary judgment on Hepburn's Title VII charges.[3]

### C. Substantive Due Process

Not all wrongs perpetrated by a government official violate substantive due process rights. Substantive due process does not protect "against government action that is 'incorrect or ill-advised,'" *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)). The Second Circuit has stated that "the protections of substantive due process are available only against egregious conduct which goes beyond merely 'offending some fastidious squeamishness or private sentimentalism' and can fairly be viewed as so 'brutal and 'offensive to human dignity' as to shock the conscience." *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 & n.6 (2d Cir. 1973) (Friendly, J.)); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). The standard for such claims is therefore quite high. As Judge Henry Friendly noted in *Johnson*, "[the acts] must be such as 'to offend even hardened sensibilities.'" *Johnson*, 481 F.2d at 1033 & n.6 (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). Accordingly, the cases in which courts have recognized a viable substantive due process claim are limited to those presenting extraordinary circumstances. Indeed, the First Circuit has noted that where "plaintiff has not been physically abused, detained, prosecuted due to racial or political motivation or otherwise deprived of equal protection of the law, courts are reluctant to find 'conscience-shocking' conduct

---

[3] Because of the Court's ruling that the behavior of which Hepburn complains cannot constitute a hostile work environment, the Court need not address Defendants' other arguments, including their statute of limitations, exhaustion of administrative remedies, qualified immunity, and municipal liability arguments. Def. Johnson's Mem. of Law in Supp. of Mot. for Summ. J. [doc. #31], at 11-13 (statute of limitations), 22-25 (exhaustion), 29-32 (qualified immunity); Defs' Mem. of Law in Supp. of Mot. for Summ. J. [doc. #29], at 11-14 (municipal liability).

that would implicate a constitutional violation." *Torres v. Superintendent of Police of Puerto Rico*, 893 F.2d 404, 410 (1st Cir. 1990).

Given the extremely high standard that courts have consistently used in evaluating substantive due process claims, this Court concludes that the acts alleged here, even taking all inferences in Hepburn's favor, do not satisfy this standard. To be sure, the acts asserted in this case constitute boorish and completely inappropriate behavior. But no reasonable jury could find that those acts meet the "shock the conscience" standard. Plaintiff's counsel suggested at oral argument that the creation of a hostile environment is itself conscience-shocking behavior, though she knew of no case that supported that theory. Though it is conceivable in a given case that a hostile work environment would be sufficiently severe that it would also satisfy the "conscience-shocking" standard, the facts in this case do not rise to that level and, indeed, as discussed above, do not even meet the standard for creation of a hostile work environment. Defendants are thus entitled to summary judgment on Plaintiff's substantive due process claims.

      **D.**     **Equal Protection**

The Supreme Court has allowed for "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Second Circuit has explained that to bring a claim under *Olech*, "plaintiffs can recover if they can show that they were treated differently from similarly situated [persons], . . . and that there was 'no rational basis for the difference in treatment.'" *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2003) (quoting *Olech*. 528 U.S. at 564).

Hepburn alleges that "subjecting the plaintiff to different treatment because of his

exercise of another constitutionally protected right is a sufficient basis for an equal protection claim." Pl's Brief in Opp'n to Both Motions for Summ. J. [doc. #35] at 19-20. Hepburn has not provided evidence from which a jury could reasonably find that he was subjected to different treatment than others similarly situated. At least one of the incidents he complains of was not even directed toward him (the word written on the blackboard in the workout room) and Hepburn himself proffers evidence that Chief Johnson behaved toward other employees in a fashion similar to the manner in which he treated Hepburn. Pl's Local Rule 56(a)2 Statement [doc. #34] ¶II.1-15 (detailing various comments Johnson made to Gayle Carpenter, his secretary); *see Carpenter*, 2004 U.S. App. LEXIS 11534, at *3 ("[T]hese claims should have been dismissed because Carpenter failed to establish that she was intentionally singled out for different treatment. As Carpenter concedes, Johnson's inappropriate treatment of her was similar to his treatment of other employees."). Accordingly, Defendants are entitled to summary judgment on Hepburn's equal protection claim.

      **E.**    **Retaliation**

Hepburn also alleges that he was retaliated against because of his complaints, in violation of the First Amendment. Pl's Brief in Opp'n to Both Motions for Summ. J. [doc. #35] at 13. The Second Circuit has held that "A public employee who seeks to recover on the ground that he has been disciplined because of the exercise of First Amendment rights must establish, as an initial matter, that his speech may be fairly characterized as constituting speech on a matter of public concern, and that that speech was at least a 'substantial' or 'motivating' factor in the adverse action taken by the employer. *Heil v. Santoro*, 147 F.3d 103, 109 (2d Cir. 1998) (internal quotations and citations omitted). Though Plaintiff and Defendants disagree on whether

Hepburn's speech touched on a matter of public concern, the Court need not address that question as it is clear from the undisputed facts that Hepburn did not suffer an adverse employment action. *Id.* at 109-10.

Plaintiff asserts a number of adverse employment actions. He claims he was moved to a smaller office, was excluded from officers' meetings, was denied a training request, was not issued protective clothing, and received a letter in his file. Supp. Mem. Of Law of Pl. in Opp'n to Both Motions for Summ. J. [doc. #49], at 1, 6. "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' Examples of such a change include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). None of the first four of the alleged actions constitutes an adverse employment action within the meaning of relevant case law: the move to a smaller office is "a mere inconvenience," the exclusion of Hepburn, admittedly not a captain or lieutenant, from captains' meetings and the denial of a lone training request cannot be considered to alter the terms and conditions of employment. Similarly, the failure to issue new protective clothing, when Hepburn did not request new clothing nor attend fires any more, cannot be said to alter anything, let alone the terms and conditions of his employment. *See* Local Rule 56(a)1 Statement [doc. #28] ¶54-69. The letter too cannot be considered an adverse action since Hepburn agrees that "the letter remains in the file although it is for informational purposes only and cannot be used as a disciplinary action." Supp. Mem. Of Law of Pl. in Opp'n to Both

10

Motions for Summ. J. [doc. #49], at 1. Insofar as the letter cannot be used for any disciplinary purpose and Hepburn has not alleged that it has been used to negatively affect the terms and conditions of his employment, the letter itself cannot be said to constitute an adverse employment action. *See Sanders*, 361 F.3d at 755 (requiring proof that a negative performance evaluation "had any effect on the terms and conditions of [plaintiff's] employment."). The Court accordingly concludes that Defendants are entitled to summary judgment on Plaintiff's retaliation claim under the First Amendment and Title VII.

F.  **State Claims**

Having disposed of the federal claims in this case, the Court has discretion to dismiss the state claims as well under 28 U.S.C. §1367(c)(3). "In exercising its discretion with respect to retaining supplemental jurisdiction, the district court balances several factors 'including considerations of judicial economy, convenience, and fairness to litigants.'" *Correspondent Services Corp. v. First Equities Corp. of Florida*, 338 F.3d 119, 126 (2d Cir. 2003) (quoting *Purgess v. Sharrock, M.D.*, 33 F.3d 134, 138 (2d Cir. 1994). While considerations of judicial economy and convenience do not lean strongly in either direction, the nature of the case and Defendants' status as state actors suggests that it would be more appropriate and fair for a state court to determine whether the behavior of city and fire department officials in this case was sufficient to violate state law. Accordingly, the Court will decline the exercise of supplemental jurisdiction over Plaintiff's state law claims. The state claims are dismissed without prejudice.

Accordingly, the Motions for Summary Judgment [docs. #27, 30] are GRANTED. The Clerk is directed to close the file and enter judgment.

IT IS SO ORDERED.


/s/      Mark R. Kravitz      
United States District Judge


Dated at New Haven, Connecticut: August 4, 2004